UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KNAUF INSULATION, LLC,              )
KNAUF INSULATION GmbH,              )
KNAUF INSULATION SPRL,              )
                                    )
            Plaintiffs,             )
                                    )
       v.                           )   No. 1:15-cv-00111-TWP-MJD
                                    )
JOHNS MANVILLE CORPORATION,         )
JOHNS MANVILLE, INC.,               )
                                    )
            Defendants.             )

**ORDER ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS RELATING TO COMMUNICATIONS WITH FOREIGN PATENT AGENT GUY FARMER**

This matter is before the Court on Defendants' Motion to Compel Production of Certain Documents Relating to Communications with Foreign Patent Agent Guy Farmer [Dkt. 427]. For the reasons set forth below, the Court **DENIES** the motion.

### I. Background

The Plaintiffs in this case (hereinafter referred to as "Knauf") allege that certain insulation products manufactured and sold by the Defendants (hereinafter referred to as "JM") infringe upon certain patents held by Knauf. Specifically, as relevant to the instant motion, Knauf alleges that JM's products infringe U.S. Design Patent Number D631,670 (the "D'670 Patent"), which patents the appearance of certain insulation.

At issue in the instant motion is Knauf's claim of privilege over certain communications between Knauf and Guy Farmer, who is a licensed patent attorney in the United Kingdom. Farmer provided Knauf with legal advice related to Knauf's application for the D'670 patent as well as other patent-related issues. In response to a subpoena from JM, Farmer produced to Knauf's counsel approximately 32,000 documents. Knauf has withheld thousands of those documents as privileged; at issue in the instant motion are a subset of those withheld documents (hereinafter referred to as "the Farmer Documents").[1]

## II. Discussion

The issue before the Court is whether and to what extent the Farmer Documents are privileged. JM argues that existing law unambiguously dictates a finding that no privilege applies. Specifically, JM argues that the "only appropriate test" for the Court to apply is the "touch base test," [Dkt. 499 at 8], and that "[a] straightforward application of the touch base test compels a ruling in JM's favor because Knauf's communications with Farmer are not privileged under U.S. law." [Dkt. 499 at 5.] The Court will assume, without deciding, for the purposes of this ruling that the touch base test is the appropriate test.[2] The Court also will assume, without

---

[1] The Court will use the term "Farmer Documents" to refer to the documents that JM seeks to compel in the instant motion. The Farmer Documents consist of documents that (1) Knauf claims are privileged because they were communications with Farmer in his capacity as legal advisor to Knauf; and (2) JM has identified as the subset of those documents that "touch base with the United States, or materials with a privilege description that is so vague as to prevent a determination of whether they touch base with the United States." [Dkt. 499 at 11.] The Farmer Documents are identified by JM in [Dkt. 428-2] and [Dkt. 428-3].

[2] The Court notes that Federal Circuit law applies to the privilege issues in this case, *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290 (Fed. Cir. 2016) ("Regarding discovery matters, this court has 'held that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law.'") (quoting *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 265

2

deciding, that all of the Farmer Documents actually "touch base" with the United States for the purposes of applying that test. The question, then, is whether, given those assumptions, JM is correct that none of the Farmer documents are privileged. For the reasons set forth below, the Court finds that JM's position is untenable.

## A. The Touch Base Test

The touch base test is a choice-of-law test used to determine which country's law applies to questions of privilege relating to communications with foreign legal professionals such as Farmer.

> Under the "touch base" doctrine, where privileged communications took place in a foreign country or involved foreign attorneys or proceedings, courts defer to the law of the country that has the "predominant" or "the most direct and compelling interest" in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum. The jurisdiction with the "predominant interest" is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent.

---

F.3d 1294, 1307 (Fed. Cir. 2001)), and it does not appear that the Federal Circuit has ever addressed the propriety of the touch base test. Accordingly, there is no binding precedent that requires this Court to apply that test. JM asserts in its brief that "every case cited by Farmer and Knauf applies comity principles only after finding that the documents at issue relate solely to foreign activity and thus do not 'touch base' with the United States." [Dkt. 428 at 14.] JM then cites numerous cases, including a citation to *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 535 (N.D. Ill.), *on reconsideration in part*, 194 F.R.D. 624 (N.D. Ill. 2000), with the following parenthetical: "noting 'the majority of documents at issue relate to activities in the United Kingdom' and omitting United States from list of countries documents related to." [Dkt. 428 at 14-15.] But the court in *Smithkline* did not apply the "touch base" test; it recognized it as something that "[o]ther courts" had applied. 193 F.R.D. at 535 n.6 ("Other courts have focused on whether the patent agents communications 'touch base' with the United States, looking to the foreign law of privilege only where those communications relate solely to activities outside this country."); *see also 2M Asset Mgmt., LLC v. Netmass, Inc.*, 2007 WL 666987, at *3 (E.D. Tex. Feb. 28, 2007) (recognizing that *Smithkline* did not follow the touch base approach).

3

*In re China Med. Techs., Inc.*, 539 B.R. 643, 652 (S.D.N.Y. 2015) (citations and internal quotation marks omitted).

> JM's argument is premised on the following assertion:
>
> Farmer is a "patent agent" in the United Kingdom, but he is not a lawyer. Farmer does not have a law degree; he is not an attorney, barrister, or solicitor in the United Kingdom or in any other country. Farmer is not barred to practice law before any U.S. state or federal court. And Farmer is not a licensed patent agent before the U.S. Patent & Trademark Office and is thus prohibited from representing clients in any matters—including patent prosecutions—pending before that Office. *See* 35 U.S.C. § 2(b)(2)(D); 37 C.F.R § 11.5 (describing practice before the U.S. Patent Office); 37 C.F.R. § 11.6 (entitled "Registration of attorneys and agents"); 37 C.F.R. Part 11, Subpart D, §§ 11.100-11.901 (U.S. Patent Office rules of professional conduct).

[Dkt. 428 at 10-11 (footnotes omitted).] JM argues:

> Farmer may refer to himself as a "patent attorney," but—with no law degree or license to practice law—his status is commeasure [sic] with that of a "patent agent" in this country. *See In re Certain Intraoral Scanners & Related Hardware & Software*, U.S. ITC Inv. No. 337-TA-1090, Order No. 24, 2018 WL 4241924, at *2 (Aug. 3, 2018) (noting "a European Patent attorney" who had "no law degree and is not licensed to practice law" is "a patent agent").

*Id.* at 11 n.2; *see also* JM's Reply brief, [Dkt. 499 at 7] ("Farmer did not attend law school, nor does he have a law degree. He has not met the requirements to be admitted to practice before any court in this country. He is not an "attorney" as that term is understood in the United States. Further, he has not registered as a patent agent with the U.S. Patent and Trademark Office."). For the purposes of analyzing JM's argument regarding the touch-base test, the Court will assume that JM's characterization of Farmer's status is entirely accurate.

The touch base test has been applied to communications with foreign patent agents in numerous cases.

> In assessing the potential availability of foreign privilege law governing communications with patent agents, most courts have engaged in a form of traditional choice-of-law "contacts" analysis . . . and have thus looked to whether

4

the client was domestic or foreign, and whether the foreign patent agent was working on foreign patent matters or assisting in efforts to obtain a United States patent. . . . The working standard in these cases has been summarized in general terms as follows: "any communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters solely involving [a foreign country] will be governed by the applicable foreign statute." . . . [C]ommunications by a foreign client with foreign patent agents "relating to assistance in prosecuting patent applications in the United States" are governed by American privilege law whereas communications "relating to assistance in prosecuting patent applications in their own foreign country" or "rendering legal advice . . . on the patent law of their own country" are, as a matter of comity, governed by the privilege "law of the foreign country in which the patent application is filed," even if the client is a party to an American lawsuit.

*Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 518-19 (S.D.N.Y. 1992)); *accord Cadence Pharm., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014) ("Communications between a foreign client and a foreign patent agent 'relating to assistance in prosecuting patent applications in the United States' are governed by the U.S. privilege law.") (quoting *Golden Trade*, 143 F.R.D. at 520).[3] Thus, assuming all of the Farmer Documents touch

---

[3] The Court notes that JM's opening brief in support of its motion contains the following case citation:

> *Masillionis v. Silver Wheaton Corp.*, No. CV-155146-CASPJWX, 2018 WL 1725649, at *2 (C.D. Cal. Apr. 2, 2018) (stating the general rule that "American law typically applies to communications concerning 'legal proceedings in the United States'" and concluding that "[c]ommunications between a foreign client and a foreign patent agent 'relating to assistance in prosecuting patent applications in the United States' are governed by the U.S. privilege law").

[Dkt. 428 at 14.] *Masillionis* is not a patent case and does not mention patent agents. The quoted language actually appears in *Cadence Pharm*, 996 F. Supp. 2d 1015.

base with the United States, pursuant to the touch base test, U.S. common law applies to whether Knauf has properly withheld them as privileged.[4]

**B. Foreign Patent-Agent Privilege**

JM insists that the law is well settled that U.S. common law does not extend a privilege to communications with foreign patent agents. Indeed, in its reply brief, JM states that "Knauf asks the Court to create a new privilege for foreign patent agents in the United States" and argues that "[t]his would also be a dramatic and unprecedented step given the strong public policy against creating new privileges under Fed. R. Evid. 501." [Dkt. 499 at 6.] The Court disagrees with JM's characterization.

JM's argument is based on an overreading—and, in some cases, a misciting—of the cases on which it relies. For example, JM's brief contains the following paragraph:

> "For patent agent communications relating to American patent activities, the privilege is *only* available to those communications involving patent agents who are registered with the [U.S.] Patent Office." *Ampicillin Antitrust Litig.*, 81 F.R.D. at 394. Accordingly, a foreign patent agent's communications with non-lawyers regarding U.S. patents or proceedings are not privileged. *Odone [v. Croda Int'l PLC*, 950 F. Supp. 10, 13 (D.D.C. 1997)] (finding UK patent agent's communication with nonlawyer regarding application to which U.S. Patent claimed priority were not privileged).

[Dkt. 428 at 21]. This implies that the holding in *Odone* was based upon the fact that the patent agent was not registered with the U.S. Patent Office. It was not. Rather, the court did not conduct **any** analysis of whether the privilege applied under U.S. law, because the defendant,

---

[4] Because the Court applies U.S. law, it does not address JM's argument that "[e]ven if Knauf were correct that UK law applies to the challenged communications, Farmer and Knauf, and/or Knauf's in-house and outside counsel widely shared legal advice with many non-lawyer employees of Knauf who were not responsible for seeking legal advice or dealing with legal issues, which would waive privilege under UK law." [Dkt. 428 at 23-24.]

who carried the burden on the issue, made "no assertion that the communications between the British patent agent and the defendant would be protected by a federal common law privilege" and, therefore, failed to carry its burden. 950 F. Supp. at 14.

JM also miscites *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 953 (N.D. Ill. 1982), for the proposition that "'[t]here is a privilege protecting communications between a lawyer and a foreign patent agent only if the communications relate to a foreign application and the law under which the patent would be issued grants a privilege to communications between clients and non-lawyer patent agents.'" [Dkt. 428 at 15] (emphasis added by JM). While that case does contain the quoted language, it appears in the context of the court discussing three approaches taken by other cases, and the court notes that the quoted approach "need[ed] some leavening in functional terms"; in other words, the approach was not wholly endorsed by the court.

There are, of course, cases that state that the only communications with a foreign patent agent that are privileged are those that do not touch base with the United States, but those cases were based on the premise that U.S. common law did not recognize a patent-agent privilege. *See, e.g.*, *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000) ("Although generally 'no communication from patent agents, whether American or foreign, are subject to the attorney-client privilege in the United States . . . the privilege may extend to communications with foreign patent agents related to foreign patent activities if the privilege would apply under the law of the foreign country and that law is not contrary to the law of this forum.'") (quoting *Burroughs Wellcome Co. v. Barr Laboratories, Inc.,* 143 F.R.D. 611, 616 (E.D.N.C. 1992)). That, however, is no longer the law, at least for cases governed by Federal Circuit law.

7

In 2016, the Federal Circuit recognized a patent-agent privilege that applies to "communications with non-attorney patent agents when those agents are acting within the agent's authorized practice of law before the Patent Office." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1302 (Fed. Cir. 2016).[5] That case did not involve foreign patent agents; accordingly, the Federal Circuit did not address the application of the privilege to communications with foreign patent agents.[6] Rather, that issue is still an open one; one that is

---

[5] JM asserts in its reply brief that "[d]uring the time period in which the communications in question occurred [2007-2015], there was no privilege for patent agents in the United States at all." [Dkt. 499 at 13.] *See also* [Dkt. 499 at 15] ("From 2007 through 2015, when most of the communications in question occurred, there was no patent-agent privilege in the United States at all—never mind a privilege for foreign patent agents. The patent-agent privilege in the U.S. did not arise until 2016."). That is, of course, not entirely correct. While the Federal Circuit had not recognized the privilege previously, the Federal Circuit noted in its opinion that other courts had. *See In re Queen's Univ. at Kingston*, 820 F.3d at 1292 ("This court has not addressed whether a patent-agent privilege exists—it is an issue of first impression for this court and one that has split the district courts.") (*comparing Buyer's Direct Inc. v. Belk, Inc.*, 2012 WL 1416639, at *3 (C.D. Cal. Apr. 24, 2012) (recognizing patent-agent privilege); *Polyvision Corp. v. Smart Techs. Inc.*, 2006 WL 581037, at *2 (W.D. Mich. Mar. 7, 2006) (same); *Mold Masters Ltd. v. Husky Injection Molding Sys., Ltd.*, 2001 WL 1268587, at *4-5 (N.D. Ill. Nov. 15, 2001) (same); *Dow Chem. Co. v. Atl. Richfield Co.*, 1985 WL 71991, at *5 (E.D. Mich. Apr. 23, 1985) (same); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 383-84, 391-94 (D.D.C. 1978) (same); *Vernitron Med. Prods., Inc. v. Baxter Labs., Inc.*, 1975 WL 21161, at *1-2 (D.N.J. Apr. 29, 1975) (same), *with Prowess, Inc. v. Raysearch Labs. AB*, 2013 WL 247531, at *5 (D. Md. Jan. 18, 2013) (declining to recognize patent-agent privilege); *Park v. Cas Enters., Inc.*, 2009 WL 3565293, at *3 (S.D. Cal. Oct. 27, 2009) (same); *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 102 (S.D.N.Y. 2006) (same); *Agfa Corp. v. Creo Prods.*, 2002 WL 1787534, at *3 (D. Mass. Aug. 1, 2002) (same); *and Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 5 (N.D. Ill. 1980) (same)). Indeed, JM's own brief quoted a decades-old case for the proposition that "'[f]or patent agent communications relating to American patent activities, the privilege is *only* available to those communications involving patent agents who are registered with the [U.S.] Patent Office.'" [Dkt. 428 at 21] (quoting *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 394 (D.D.C. 1978)). Thus, while the patent-agent privilege was not universally recognized by federal courts prior to the Federal Circuit's recognition of it in 2016, it is a gross overstatement to say that no such privilege existed in the United States.

[6] The fact that, as JM notes, "[t]he Federal Circuit considered the scope of the patent-agent privilege as recently as 2016 and did not extend the privilege to foreign patent agents at that

8

squarely before this Court and must be addressed.  In other words, the Court must apply the law of privilege, as informed by the relevant law—in this case, the Federal Circuit's holding in *Queen's University*—to the situation before it.  That is neither "dramatic" nor "unprecedented"; it is what courts are called upon to do every day.

JM argues that the patent-agent privilege may be applied only to patent agents who are registered with the U.S. Patent Office, which Farmer is not, because U.S. patent agents must be so registered in order for the privilege to apply.  The Court disagrees.  JM recognizes, at least implicitly, that the Farmer Documents would be privileged if Farmer were a lawyer in the U.K. rather than a patent agent, even though he is not a member of a U.S. bar.  The patent-agent privilege should be treated as analogous to the attorney-client privilege.  The court in *Queen's University* explained its decision to create a patent-agent privilege as follows:

> To the extent Congress has authorized non-attorney patent agents to engage in the practice of law before the Patent Office, reason and experience compel us to recognize a patent-agent privilege that is coextensive with the rights granted to patent agents by Congress.  A client has a reasonable expectation that all communications relating to obtaining legal advice on patentability and legal services in preparing a patent application will be kept privileged.  Whether those communications are directed to an attorney or his or her legally equivalent patent agent should be of no moment.

*Queen's Univ.*, 820 F.3d at 1298 (internal citation omitted).  Following that reasoning, it also should be of no moment whether the foreign legal advisor relied upon by Knauf was an attorney or a patent agent.  That means that just like a U.K. attorney does not have to be a member of a bar in the United States for the attorney-client privilege to apply to him or her, so too with a

---

time, nor has it since," [Dkt. 499 at 6], means only that the Federal Circuit has not had the occasion to consider the issue because no case before it has raised the issue.  Indeed, the parties do not cite to any case that has considered the issue since *Queen's University* was decided, and the Court's own research has not revealed any.

9

foreign patent agent. The relevant inquiry is not whether Farmer is registered by the U.S. Patent Office, but whether he holds the equivalent qualification and registration in the U.K. There is no question that he does; Knauf has submitted evidence that demonstrates that Farmer is admitted to the U.K. Register of Patent Attorneys and is a Fellow of The Chartered Institute of Patent Attorneys.

JM also argues that "even if Farmer were a registered U.S. patent agent (which he is not), the documents discussed above and many of the other documents logged would not be privileged under U.S. law because they fall outside the narrowly-defined role of patent agents in practicing before the U.S. Patent and Trademark Office." [Dkt. 428 at 22.] There is no suggestion, however, that Farmer was acting outside of his authority as a **U.K.** patent agent, which is the relevant inquiry. In other words, while JM argues that applying U.S. privilege law to foreign patent agents means applying the patent-agent privilege only to communications that relate to services that patent agents are permitted to provide in the United States, the Court disagrees. Rather, as long as the patent agent in question is subject to regulation in his or her own country analogous to being registered with the Patent Office in this country, applying U.S. privilege law to foreign patent agents means applying the patent-agent privilege to communications relating to services that the patent agent is permitted to provide in the patent agent's own country. To hold otherwise would be contrary to the goal of protecting the client's reasonable expectation of privilege in its communications with its legal advisor.

This holding is consistent with the privilege rules that have recently been adopted by the Patent and Trademark Office, which provide as follows:

> (a) Privileged communications. A communication between a client and a USPTO patent practitioner **or a foreign jurisdiction patent practitioner that is reasonably necessary and incident to the scope of the practitioner's authority**

shall receive the same protections of privilege under Federal law as if that communication were between a client and an attorney authorized to practice in the United States, including all limitations and exceptions.

(b) Definitions. The term "USPTO patent practitioner" means a person who has fulfilled the requirements to practice patent matters before the United States Patent and Trademark Office under § 11.7 of this chapter. **"Foreign jurisdiction patent practitioner" means a person who is authorized to provide legal advice on patent matters in a foreign jurisdiction, provided that the jurisdiction establishes professional qualifications and the practitioner satisfies them.** For foreign jurisdiction practitioners, this rule applies regardless of whether that jurisdiction provides privilege or an equivalent under its laws.

(c) Scope of coverage. USPTO patent practitioners and foreign jurisdiction patent practitioners shall receive the same treatment as attorneys on all issues affecting privilege or waiver, such as communications with employees or assistants of the practitioner and communications between multiple practitioners.

37 C.F.R. § 42.57 (effective December 7, 2017) (emphasis added). While this rule applies only to proceedings before the PTO, it is noteworthy that it was developed by "the agency authorized by Congress to regulate patent agents," *Queen's Univ.*, 820 F.3d at 1310 (dissenting opinion), which, applying its expertise and experience,[7] determined that the patent-agent privilege should apply to foreign patent agents acting within the scope of their authority, however that may be defined in their home country.

---

[7] As Knauf notes in its brief, the dissent in *Queen's University* noted that at that point "the USPTO ha[d] not recommended the creation of an agent-client privilege by courts" but that "[w]ere it to do so, the USPTO would provide valuable and practical guidance, such as the proper scope for such a privilege." 820 F.3d at 1306 n.4. JM suggests in its reply brief that the majority in *Queen's University* disagreed with this notion. *See* [Dkt. 499 at 15 n.6] ("[T]he majority held that the 'dissent's desire to defer to the Director of the Patent Office' is 'off-base' because 'the Director has no authority to create a privilege that would be applicable in court.'") (quoting 820 F.3d at 1302). However, what the majority meant by the quoted language is that it was not appropriate for the courts to **wait** for the USPTO to act with regard to the patent-agent privilege because the courts, not the USPTO, were "the ones squarely charged with considering the question under Rule 501." *Id.* This in no way discounts the fact that the USPTO's considered decision regarding the application of the patent-agent privilege to foreign patent agents and what the scope of that privilege should be is instructive.

11

### III. Conclusion

The Court holds that the patent-agent privilege applies to Knauf's communications with Farmer that were made within the scope of Farmer's authority as a patent attorney in the U.K. JM has "specifically reserve[d] the right to bring an additional motion to compel relating to the Farmer documents on more specific grounds, for example challenging specific documents and/or specific deficiencies in Knauf's privilege logs," [Dkt. 499 at 6 n.1], and the Court agrees that it would not have served judicial economy for the parties to brief any such arguments before the Court resolved the general privilege issue. Accordingly, if the parties are unable to resolve any such issues, JM may seek leave to file a motion to compel raising them.

SO ORDERED.

Dated: 1 OCT 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.