UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KNAUF INSULATION, LLC, | ) | |
| KNAUF INSULATION GmbH, | ) | |
| KNAUF INSULATION SPRL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-00111-TWP-MJD |
| | ) | |
| JOHNS MANVILLE CORPORATION, | ) | |
| JOHNS MANVILLE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFFS' MOTION TO COMPEL RESPONSE TO
INTERROGATORY NO. 63**

This matter is before the Court on Plaintiffs' Motion to Compel Response to Interrogatory No. 63 [Dkt. 507]. For the reasons set forth below, the Court **GRANTS** the motion.

**I. Background**

The Plaintiffs in this case (hereinafter referred to as "Knauf") allege that certain insulation products manufactured and sold by the Defendants (hereinafter referred to as "JM") infringe upon certain patents held by Knauf. Specifically, as relevant to the instant motion, Knauf alleges in its Fifth Amended Complaint that JM's products infringe because of the bio-based binder they use.

At issue in the instant motion is Knauf's Interrogatory No. 63, which reads:

Do the people at JM that developed JM-212 bio-based binder, JM-2000 bio-based
binder, or any other sugar-containing binder have an understanding of what is

> meant by the scientific term "Maillard reaction"? If so, separately state the
> understanding of each such person that has an understanding, and for each such
> person that does not have an understanding, please identify them by name.

For purposes of this motion, Knauf has narrowed the interrogatory to ask about seven specific individuals (hereinafter referred to as "the Chemists"), each of whom is a current or former JM employee who is represented by JM's counsel.

## II. Legal Standard

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(4). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party must show with specificity that the request is improper. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002).

Under Federal Rule of Civil Procedure 26(b)(1), generally "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevant information does not need to be "admissible to be discoverable." Fed. R. Civ. P. 26(b)(1).

## III. Discussion

The term "Maillard reaction" is used in some of the patents at issue in this case and was used by some JM employees in documents relating to the alleged infringing products. JM argues that the Chemists' understanding of the term is irrelevant to the issues in this case. Knauf counters that JM has waived its objections to Interrogatory 63 as it applies to the Chemists and, in any event, the Chemists' understanding of the term "Maillard reaction" is relevant to at least two issues in this case: claim construction and willful infringement.

2

## A. Waiver

As noted above, Interrogatory 63 originally was very broad, seeking information regarding each of "the people at JM that developed" the allegedly infringing biobinders. Not surprisingly, JM objected to it on that basis. On May 8, 2019, Knauf proposed that JM limit its response to the Chemists. In response, on May 14, 2019, JM's counsel stated in an email to Knauf's counsel that "we are in the process of working with our client to schedule [the Chemists] for interviews. After those are completed, JM will prepare a supplemental response." [Dkt. 507-4 at 2.]

Knauf argues that this email constituted a stipulation by JM pursuant to Federal Rule of Civil Procedure 29(b) and that "[b]y agreeing to supplement its response regarding the more limited set of [the Chemists], JM has waived its objections." [Dkt. 508 at 3.] This argument is without merit. JM did not promise a substantive answer to Interrogatory 63 as narrowed; it promised a supplemental response. That is unsurprising; JM's position with regard to the narrowed interrogatory was likely to be different than its position regarding the original, much broader, interrogatory, and it was wholly appropriate for JM to gather information from the Chemists before taking a position with regard to the interrogatory as narrowed. The email in question simply informed Knauf that that process was underway. No waiver occurred.

## B. Relevance

JM's relevancy argument is two-fold. First, JM notes that the interrogatory seeks the Chemists' **current** understanding of the meaning of the term "Maillard reaction," and argues that what is relevant to claim construction is the meaning of the term at the time Knauf's patent applications were filed, which was in 2005. *See* [Dkt. 520 at 4] ("To the extent evidence from

3

JM could be relevant, it would be JM's understanding of the claim term at the time of Knauf's alleged invention in 2005, which Knauf's interrogatory does not even seek."). Knauf responds:

> JM has introduced a temporal component to Interrogatory No. 63 that is not present in the interrogatory as it is written, limiting its interpretation of the interrogatory to only include "JM employees' present-day understanding of the claim term." ECF No. 520, p. 7. However, Interrogatory No. 63 is not so limited, as the text of the interrogatory never specifically asks only for the employees' present-day or current understanding of the term. A person's understanding of a topic is the result of knowledge acquired over a period of time; therefore, asking for a description of an employee's understanding of the term "Maillard reaction" will necessarily include the state of an employee's knowledge at points in the past. It is incorrect for JM to assume that an employee's "understanding" of a term does not include any past knowledge of that term.

[Dkt. 527 at 4.] This argument is, quite frankly, nonsensical. The interrogatory is written in the present tense; it asks whether the Chemists "**have** an understanding" and, if so, what that understanding **is**. It does not ask what the Chemists' understanding **was** at some point in the past or, if their understanding has changed over time, what the various understandings have been. Perhaps that is what Knauf intended to ask, but it is not what the words Knauf used in its interrogatory mean in the English language.

However, it does not follow that the information sought in Interrogatory 63 is irrelevant. There is no dispute that the meaning of the term Maillard reaction as used in Knauf's patents is at issue in this case. "Generally, terms in a patent claim are given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art." *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003). Knauf argues, and JM does not dispute, that the Chemists are individuals skilled in the relevant art.[1] There are several

---

[1] JM notes, correctly, that evidence from the Chemists would be extrinsic evidence of the term's meaning and argues that the discovery should not be permitted because the use of such extrinsic evidence in the claim construction process is "allowed but discouraged" by the Federal Circuit.

4

possibilities with regard to each of them: (1) they have no understanding of the term Maillard reaction; (2) they have an understanding of the term that has remained constant over time; or (3) they have an understanding of the term now that is different than the understanding they had in 2005. If some or all of the Chemists' understanding of the term has evolved over time, that fact, and the reason for the change, is relevant to the issue of whether Maillard reaction is a scientific term with a fixed meaning or whether those skilled in the art have different understandings of the term's meaning. While it may be odd that the interrogatory as written requires the Chemists to provide only part of the information relevant to that inquiry, that, alone, does not make it objectionable.[2] Knauf is entitled to organize and sequence its discovery as it sees fit, and Knauf can conduct follow-up discovery to obtain the remaining information. *See* Federal Rule of Civil Procedure 26(d)(3). JM has not demonstrated that the information sought is irrelevant to the issue of claim construction.[3]

---

[Dkt. 520 at 8] (citing *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, this does not mean that extrinsic evidence is never relevant; indeed, the Federal Circuit has recognized that it can be helpful in some cases. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008) ("When construing claims, the claims and the rest of the patent, along with the patent's prosecution history (together, the intrinsic evidence of the meaning of the claims) are the primary resources; while helpful, extrinsic sources like dictionaries and expert testimony cannot overcome more persuasive intrinsic evidence."). Thus, it would be improper to bar discovery regarding extrinsic evidence on the ground that it is irrelevant.

[2] Neither does the fact that Knauf intends to depose some or all of the Chemists mean that it may not also seek information about their understanding of the term via an interrogatory.

[3] Because the Court finds the information relevant to claim construction, the Court need not address whether it also is relevant to the issue of willful infringement.

## C. Proportionality

Finally, JM argues that requiring it to respond to Interrogatory No. 63 would require "navigating complex privilege issues," and therefore the effort required would be disproportionate to the needs of the case. JM's entire privilege argument is as follows:

> Interrogatory No. 63 asks only for JM's present-day understanding of the claim term, which is not relevant as shown above, and the parties have been litigating Knauf's infringement allegations for at least the past four years. Thus, in order to provide a non-privileged answer, the JM employees would need to (1) remove any privileged information they have regarding the claim term based on the last four years of litigation, and (2) remove any knowledge they have of the claim term in the context of JM's products. To the extent this can even be done, it is not without a significant risk of privilege waiver.

[Dkt. 520 at 10-11.] The Court does not understand, and JM does not explain, what "privileged information" the Chemists would have regarding the scientific term "Maillard reaction." "It is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011), and "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016). In any event, facts are not privileged; communications are. *See Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). The interrogatory does not require Knauf to reveal any communications between the Chemists and counsel. It does not ask the Chemists to make a legal determination regarding the construction of any patent claim; it asks for their understanding, as scientists, of a scientific term. Whether that understanding is based solely on their studies of chemistry in school, solely on their work as JM employees, or has been informed by many factors, it is not privileged.

## IV. CONCLUSION

For the reasons set forth above, Knauf's Motion to Compel Response to Interrogatory No. 63 [Dkt. 507] is **GRANTED**.[4] JM shall serve its response to Interrogatory No. 63, as narrowed to relate to the Chemists, by **October 25, 2019**.

SO ORDERED.

Dated: 15 OCT 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

---

[4] Although JM's position ultimately did not prevail, the Court finds that JM's objections to Interrogatory No. 63 were substantially justified, and therefore an award of attorneys' fees to Knauf, as the prevailing party with regard to the motion to compel, would not be appropriate. *See* Federal Rule of Civil Procedure 37(a)(5)(A)(ii).