**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| KNAUF INSULATION, LLC,<br>KNAUF INSULATION GmbH, and<br>KNAUF INSULATION SPRL, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00111-TWP-MJD |
| | ) | |
| JOHNS MANVILLE CORPORATION, and<br>JOHNS MANVILLE, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JOHNS MANVILLE CORPORATION, and<br>JOHNS MANVILLE, INC., | ) ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL, and<br>KNAUF INSULATION, LLC, | ) ) ) | |
| | ) | |
| Counter-Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION TO STAY CASE**

This matter is before the Court on Defendants Johns Manville Corporation and Johns Manville, Inc.'s (collectively, "Defendants") Motion to Certify Order for Interlocutory Appeal (Filing No. 664) and Motion to Stay Case (Filing No. 674). The Defendants ask the Court to certify for interlocutory appeal the Magistrate Judge's October 1, 2019 Order denying their motion to compel the production of certain documents relating to communications with foreign patent agent Guy Farmer ("Farmer"), and the Court's decision to overrule the Defendants' objections to

that discovery Order and to adopt the recommendation.  The Defendants also ask the Court to stay the case during the pendency of the *ex parte* reexamination proceedings before the United States Patent and Trademark Office ("PTO") and, pending Interlocutory Appeal.  For the reasons stated below, the Court **denies** the Defendants' Motion to Certify Order for Interlocutory Appeal and **grants** the Motion to Stay Case.

## I.   BACKGROUND

Plaintiffs Knauf Insulation LLC, Knauf Insulation GmbH, and Knauf Insulation SPRL (collectively, "Plaintiffs") are in the business of producing and selling building materials, including insulation, such as fiberglass insulation and related products.  Defendants are a competitor of the Plaintiffs in the U.S. market for fiberglass insulation products.  The Plaintiffs initiated this action for patent infringement against the Defendants on January 27, 2015.  In response, the Defendants filed numerous counterclaims against the Plaintiffs.

On June 4, 2019, the Defendants filed a motion to compel the production of certain documents relating to communications with foreign patent agent Farmer (Filing No. 427).  The Plaintiffs withheld the documents from the Defendants on the basis that the documents are privileged.  The Defendants' motion to compel was referred for decision to the Magistrate Judge pursuant to Rule 72(a).

On October 1, 2019, the Magistrate Judge issued his Order, denying the Defendants' request to compel the production of the Farmer documents (Filing No. 579).  In his Order, the Magistrate Judge explained that he applied (at the recommendation of the Defendants) the "touch base test," and he took to be true the Defendants' characterization of Farmer's professional status. *Id.* at 2–4. The Magistrate Judge denied the motion to compel on the basis that the Farmer

documents are protected by the patent-agent privilege, relying on the Federal Circuit's decision in *In re Queen's University at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016). *Id.* at 12.

On October 15, 2019, the Defendants filed objections to the Magistrate Judge's Order (Filing No. 585). They argued that the Court should set aside the Magistrate Judge's Order and compel the production of the Farmer documents. The Defendants argued the Magistrate Judge erred by applying the patent-agent privilege to Farmer, a foreign patent agent, and compounded that error by enlarging the protection afforded to foreign patent agents beyond the protection afforded to U.S. patent agents. The Defendants further argued there is a strong public policy against the creation of new privileges under Federal Rule of Evidence 501, and it was an error to create a new foreign patent-agent privilege. The Defendants asserted that the Order is inconsistent with the PTO's privilege rules, and the Farmer documents are relevant to their "inequitable conduct" counterclaim, thereby overcoming any privilege.

The Court reviewed the parties' filings and arguments, the Federal Circuit's 2016 decision in *In re Queen's University at Kingston*, and the Magistrate Judge's discovery Order. The Court noted that the Federal Circuit, in *In re Queen's University at Kingston*, created the patent-agent privilege and left open the question of whether such a privilege should apply to foreign patent agents because that question was not before the court. The Court also noted that the breadth of any foreign patent-agent privilege was not determined by the Federal Circuit in *In re Queen's University at Kingston*. The Court concluded that the Magistrate Judge's decision is consistent with the legal principles laid out in *In re Queen's University at Kingston* as applied to foreign patent agents, overruled the Defendants' objections, and adopted the Magistrate Judge's discovery Order (Filing No. 658). The Defendants now seek certification from the Court for an interlocutory

appeal of the discovery Order and the Court's decision to uphold that Order.  They also ask for a stay of the case.

## II.    LEGAL STANDARDS

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation. There is also a nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed.

*Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original).

The party requesting an interlocutory appeal has the heavy burden of persuading the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

Concerning motions to stay, courts have inherent authority and broad discretion to manage their dockets and stay proceedings, which includes the authority to stay a case pending resolution of related proceedings before the PTO.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988).

[T]he relevant factors to be considered by the Court in deciding whether a stay is appropriate during the reexamination process [are]: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court.

*King Sheng Co. v. Hollywood Eng'g, Inc.*, 2018 U.S. Dist. LEXIS 20742, at *3 (S.D. Ind. Feb. 8, 2018). Courts also consider "whether the litigation is at an early stage." *Endotach LLC v. Cook Med., Inc.*, 2014 U.S. Dist. LEXIS 27802, at *8 (S.D. Ind. Mar. 5, 2014).

### III.   DISCUSSION

The Court will first address the Defendants' Motion to Certify Order for Interlocutory Appeal and then turn to the Motion to Stay Case.

### A.   Motion to Certify Order for Interlocutory Appeal

The Defendants assert an interlocutory appeal is appropriate because the existence and scope of a foreign patent-agent privilege is a controlling question of law upon which there is substantial ground for difference of opinion, and resolving this question will materially advance the ultimate termination of the litigation. They note that their request for an interlocutory appeal was made within a reasonable time after the Entry and Order sought to be appealed were entered. The Plaintiffs do not dispute the satisfaction of this last, non-statutory requirement; the Court issued its Entry on June 12, 2020, and the Defendants filed their Motion eleven days later on June 23, 2020. The Court concludes the Defendants filed their Motion "in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz*, 219 F.3d at 675 (emphasis added).

The Plaintiffs argue that this is not an exceptional case where interlocutory appeal would avoid protracted litigation. This litigation is now in its fifth year and Plaintiffs assert that an interlocutory appeal would further delay this case and add more expense. The Plaintiffs argue the Defendants cannot satisfy the prerequisites for an interlocutory appeal.

> First, Guy Farmer's privilege as a UK patent attorney is not pertinent to the issues remaining in this litigation, and is thus not a "controlling issue of law in the case." Second, there is no substantial ground for disagreement. The two Courts that have decided this issue following *Queens University*, the USPTO, and a roundtable

conducted by the USPTO have all concluded that a foreign patent-agent privilege is appropriate. Third, certification is wholly inappropriate here for the simple reason that an immediate appeal will not dispose of the entire case, and therefore will not promote judicial efficiency of this already protracted litigation. Rather than speeding up this litigation, it will only further delay these proceedings.

(Filing No. 679 at 2.)

The Plaintiffs argue the Defendants are overstating the importance of the Farmer documents, and these documents are not pertinent to the claim construction, infringement, patentability, and damages issues that remain in this litigation. They assert that the documents are not relevant to the "wrongly named inventor" and "inequitable conduct" issues raised by the Defendants. Thus, the privilege issue related to Farmer does not present a controlling question of law that could materially advance the ultimate termination of the litigation. "[A] question of law is 'controlling' within the meaning of § 1292(b) only if [the] resolution of that issue could have an immediate impact on the course of the litigation." *Fujitsu Ltd. v. Tellabs, Inc.*, 539 F. App'x 1005, 1007 (Fed. Cir. 2013). The Plaintiffs assert that the claims and defenses at issue do not turn on the foreign patent-agent privilege, and any documents protected from disclosure due to the privilege are not relevant to resolution of the remaining substantive issues. The issue of a foreign patent-agent privilege is only a collateral issue.

Pointing to *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991) and *Reise v. Board of Regents of Univ. of Wisconsin Sys.*, 957 F.2d 293, 295 (7th Cir. 1992), the Plaintiffs argue that courts have held discovery orders are not appealable prior to entry of final judgment. They assert, "despite [the Defendants'] cursory assertion that privilege issues routinely warrant § 1292(b) review, the Federal Circuit has specifically denied interlocutory appeal regarding the scope of attorney-client privilege 'because, no matter how the discovery dispute is resolved, the

case will still proceed on the merits . . . .'" (Filing No. 679 at 9 (quoting *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2017 U.S. App. LEXIS 22698, at \*4 (Fed. Cir. Feb. 24, 2017).)

The Plaintiffs also argue that there is no substantial ground for a difference of opinion about the foreign patent-agent privilege.  That an issue may be "novel" is not a sufficient basis for a substantial ground for a difference of opinion.

> [T]he mere lack of judicial precedent on the issues does not establish substantial ground for difference of opinion. Indeed, if interlocutory appeals were permissible whenever there is merely the lack of judicial precedent, the effect would be no more than to obtain an appellate stamp of approval on the ruling(s) by the trial court. Instead, we examine the strength of the arguments in opposition to the challenged ruling. This analysis includes examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification.

*Emley v. Wal-Mart Stores, Inc.*, 2020 U.S. Dist. LEXIS 3723, at \*14 (S.D. Ind. Jan. 8, 2020) (quoting *In re Bridgestone/Firestone, Inc.*, 212 F. Supp. 2d 903, 909–10 (S.D. Ind. 2002)).

The Plaintiffs contend the Defendants' suggested "split of authority" on the foreign patent-agent privilege is inaccurate. The Defendants rely on divergent district court decisions issued *before* the Federal Circuit's decision in *Queen's University* and on decisions issued *after Queen's University* that do not show a split of authority.  Explaining the Defendants' cited authority, the Plaintiffs note that an administrative law judge ("ALJ") held certain documents were not privileged because the documents did not fit within the patent-agent privilege established by *Queen's University*. *See In the Matter of Certain Intraoral Scanners & Related Hardware & Software*, Order No. 24, USITC Inv. No. 337-TA-1090, 2018 WL 4241924 (Aug. 3, 2018). The Plaintiffs argue that a district court magistrate judge then essentially overruled the ALJ's decision and quoted from the Magistrate Judge's Order in this case to recognize that a foreign patent-agent privilege exists; the district court judge then adopted the magistrate judge's order recognizing a foreign patent-agent privilege. *See Align Tech., Inc. v. 3Shape A/S*, No. CV 17-1646-LPS, 2020 WL

1873026, at *1 (D. Del. Apr. 15, 2020); Filing No. 679-2.  Those decisions are consistent with, not

conflicting with, the Magistrate Judge's Order in this case, and thus, there is not a substantial

ground for a difference of opinion about the foreign patent-agent privilege.

To support their Motion for Interlocutory Appeal, the Defendants assert that the question

of the existence and scope of a foreign patent-agent privilege presents a pure question of law

independent of the factual record.  It is well-suited for review by the Federal Circuit Court of

Appeals.  The Defendants argue that the Plaintiffs' position ignores Supreme Court guidance:

> The preconditions for § 1292(b) review—"a controlling question of law," the
> prompt resolution of which "may materially advance the ultimate termination of
> the litigation"—are most likely to be satisfied when a privilege ruling involves a
> new legal question or is of special consequence, and district courts should not
> hesitate to certify an interlocutory appeal in such cases.

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009).

The Defendants further argue,

> On the other disputed requirement—a substantial ground for difference of
> opinion—Knauf wrongly downplays the split among courts on this issue and
> ignores the significant tensions between this Court's decision and *In re Queen's
> Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016), especially because this Court's
> Order recognized a foreign patent-agent privilege that is even *broader* than the
> Federal Circuit's narrow privilege for domestic patent agents.

(Filing No. 681 at 2.)

The Defendants assert that the issue of a foreign patent-agent privilege will determine

whether thousands of Farmer documents must be produced.  If Federal Circuit review of the

privilege issue is delayed until after final judgment, and if the privilege decision is reversed,

reversal would require the parties to relitigate much of this case.  Thus, the Defendants argue, the

issue is controlling and will speed up resolution of the litigation for purposes of § 1292(b).

The Defendants argue that the Plaintiffs are wrong that discovery orders are not appealable

prior to final judgment.  The decisions relied upon by the Plaintiffs (*Quantum* and *Reise*) involved

the collateral order doctrine, which is a narrow exception to the final judgment rule, but this case involves an interlocutory appeal under § 1292(b), not the collateral order doctrine. And the Supreme Court made clear in *Mohawk* that privilege decisions are appropriately reviewed on interlocutory appeal pursuant to § 1292(b).

Concerning the requirement of a "controlling" question of law, the Defendants assert that "[a] question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Entm't. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Furthermore, "the resolution of an issue need not necessarily terminate an action in order to be 'controlling." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)). The Defendants argue that the thousands of withheld Farmer documents likely are the most direct proof of the Plaintiffs' alleged inequitable conduct, including Farmer's advice about the Plaintiffs naming one inventor of the D'670 patent and then changing that inventorship. They assert the privilege question is controlling as to the Plaintiffs' inequitable conduct.

The Defendants argue that the Plaintiffs have overlooked the diverging and contrary legal authority concerning a foreign patent-agent privilege, which provides a substantial ground for difference of opinion. In support of their argument, the Defendants point to *Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566, at *7–9 (S.D.N.Y. July 24, 2002) and *Quantum Corp. v. W. Digital Corp.*, 1990 WL 357245, at *3 (N.D. Cal. 1990). In *Johnson*, the court held,

> [T]o the extent that the [foreign patent agent] documents concern royalty payments or other issues arising under the Agreement, New York law governs and they must be disclosed. On the other hand, to the extent that they concern only the license of right proceeding [in Britain], such documents are privileged and need not be produced.

2002 WL 1728566, at *9.  In *Quantum*, the court held that the attorney-client privilege did not apply to communications with foreign associates who were not subordinates of United States patent counsel.  The Defendants further assert that the courts that have recognized a foreign patent-agent privilege following the *Queen's University* decision used divergent reasoning to recognize the privilege, and this further supports their position that there is a substantial ground for difference of opinion.

The Defendants also argue there is a substantial ground for difference of opinion based on this Court's privilege decision and the Federal Circuit's decision in *Queen's University*.  They assert this Court's decision gives greater protection to foreign patent agents than *Queen's University* afforded to domestic patent agents, and the rationale for creating the privilege in *Queen's University* (Congress's authorization) does not apply to foreign patent agents.  Additionally, the patent agent in *Queen's University* was both a foreign and domestic patent agent, but his authority under foreign law did not alter the scope of the patent-agent privilege.  The Defendants argue that these "tensions" between *Queen's University* and this Court's privilege decision give rise to a substantial ground for difference of opinion.

The party requesting an interlocutory appeal has the heavy burden of persuading the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers*, 437 U.S. at 475.  Furthermore, the Seventh Circuit has been very clear about the movant's obligation to meet all five requirements for interlocutory appeal.  "Unless *all* these criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal under section 1292(b)." *Ahrenholz*, 219 F.3d at 676 (emphasis in original).

Because the Defendants have not met their burden of establishing "a substantial ground for difference of opinion," the Court determines that interlocutory appeal is not appropriate, and the Court focuses its analysis on this requirement.  The Court recognizes that the Supreme Court suggested that "[t]he preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'— *are most likely to be satisfied* when a privilege ruling involves a new legal question." *Mohawk*, 558 U.S. at 110–11 (emphasis added).  However, the Court notes that the Supreme Court did not include in its suggestion the requirement of "a substantial ground for difference of opinion" as most likely being satisfied when a privilege ruling involves a new legal question.

The Court recognized in its Entry overruling the Defendants' objections to the Magistrate Judge's discovery Order that,

> The Federal Circuit, in *In re Queen's University at Kingston*, created the patent-agent privilege and left open the question of whether such a privilege should apply to foreign patent agents because that question was not before the Court. The breadth of any foreign patent-agent privilege also was not determined by the Federal Circuit in *In re Queen's University at Kingston*.

(Filing No. 658 at 4.)  "However, the mere lack of judicial precedent on the issue does not establish substantial ground for difference of opinion."  *In re Bridgestone/Firestone*, 212 F. Supp. 2d at 909.

The Defendants' argument that there are "tensions" between the *In re Queen's University at Kingston* decision and this Court's privilege decision is unavailing.  As the Court noted in its earlier Entry, "the Magistrate Judge's decision is consistent with the legal principles laid out in *In re Queen's University at Kingston* as applied to foreign patent agents."  (Filing No. 658 at 4.)  The Court remains convinced that the Order and Entry are consistent with the legal principle laid out in *In re Queen's University at Kingston*. Therefore, Defendants' argument does not support a substantial ground for difference of opinion as required for an interlocutory appeal.

The Court is not convinced that a substantial ground for difference of opinion arises from the two decisions that predate *In re Queen's University at Kingston* upon which the Defendants rely. In *Johnson*, the district court recognized, "to the extent that [foreign patent agent documents] concern only the license of right proceeding [in Britain], such documents are privileged and need not be produced." 2002 WL 1728566, at *9. In *Quantum*, the district court decided that the attorney-client privilege did not apply to communications with foreign associates who were not subordinates of United States patent counsel. 1990 WL 357245, at *3. Neither district court had the benefit of the Federal Circuit's decision in *In re Queen's University at Kingston*, and neither decision actually precludes the existence of a foreign patent-agent privilege.

The Court disagrees with the Defendants' contention that a substantial ground for difference of opinion arises out of the Courts' application of the "touch base test" rather than "principles of comity" to arrive at the same conclusion of recognizing a foreign patent-agent privilege. *Compare Align Tech., Inc.*, 2020 WL 1873026 *with* this Court's decision at Filing No. 579.

The Defendants have failed to satisfy their heavy burden of establishing the requirements to obtain an interlocutory appeal. An interlocutory appeal would not speed up resolution of this case; rather, an interlocutory appeal on this limited discovery issue would delay the case. This case is more than five years old and already has been delayed by the Defendants' prior stay and prior discovery disputes. An interlocutory appeal is not warranted because the Defendants have failed to establish a substantial ground for difference of opinion, which is one of the necessary requirements before a district court may certify an interlocutory appeal. Therefore, the Court **denies** the Defendants' Motion to Certify Order for Interlocutory Appeal.

B.    <u>**Motion to Stay Case**</u>

The Defendants ask the Court to stay this case for two reasons: first, there is pending before the PTO an *ex parte* reexamination of a key patent in this case; second, the Defendants have requested interlocutory appeal of the foreign patent-agent privilege.

As to this second reason for a stay, the Defendants argue,

[F]or the reasons set forth in JM's pending Motion for Certification of an Interlocutory Appeal ("Appeal Motion"), this Court should give the Federal Circuit the opportunity to answer the novel legal question regarding the existence and breadth of a foreign patent-agent privilege. The final resolution of that issue likely will fundamentally shape the litigation over Knauf's sole asserted design patent.

(Filing No. 674-1 at 5.) They further assert that "awaiting rulings from the [] Federal Circuit will make this case simpler, more efficient, and less likely to require any re-litigation." *Id.* This reason for a stay is unavailing because the Court is denying the Defendants' Motion to Certify Order for Interlocutory Appeal. Therefore, the Court will focus its discussion on the Defendants' first basis for a stay.

The Defendants assert,

[T]he PTO's ongoing *ex parte* reexamination of a key patent in this case, and JM's outstanding and forthcoming requests that the PTO similarly reexamine the rest of Knauf's asserted utility patents, create a very high likelihood that at least some claims in this case will be cancelled or changed. In fact, 79% of *ex parte* reexaminations result in claims being cancelled or changed.

*Id.*

The Defendants asked the PTO on February 27, 2020, to "conduct an *ex parte* reexamination of claim 11 of the '210 Patent—the sole remaining asserted claim of that patent—identifying three substantial new questions of patentability." *Id.* at 7. The PTO issued an order granting the request and instituting an *ex parte* reexamination on April 9, 2020. On June 9, 2020,

the Plaintiffs petitioned the director of the PTO to vacate the order on the basis that it violated 35 U.S.C. § 315(e)(1).  *Id.* at 8.

On June 16, 2020, the Defendants "filed additional petitions for *ex parte* reexamination of all of the 'Swift' utility patents asserted in this case . . . [and] [t]wo other patents in the 'Swift' family (not asserted here) were previously cancelled in *ex parte* reexamination proceedings initiated by third-party Rockwool." (Filing No. 674-1 at 8.) The Defendants assert that "the substantial new questions of patentability raised in [their] petitions include grounds similar to those raised in Rockwool's successful petitions," and they "also expect[] to file petitions for *ex parte* reexamination of the three remaining utility patents in the case, all from the same family as the '210 Patent, based on similar grounds as the '210 petition that resulted in the PTO instituting reexamination within six weeks."  *Id.*

The Defendants argue, "[w]hile this Court is generally reluctant to stay litigation, it recognizes that stays are often favored in patent infringement suits involving co-pending reexamination of the patents-in-suit by the PTO." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 2012 WL 5878087, at *1 (S.D. Ind. Nov. 20, 2012).  The Defendants assert a stay is appropriate in light of the district court decision to stay the case in *King Sheng Co. v. Hollywood Eng'g, Inc*.  Similar to this case, the *King Sheng* case had commenced written discovery and document production, and a motion for partial summary judgment had been filed, but the parties had not yet briefed any claim construction issues.  *King Sheng*, 2018 U.S. Dist. LEXIS 20742, at *3–7.  The court concluded that delay alone did not constitute undue prejudice, and PTO reexamination was likely to streamline the case, so the court stayed the case.  *Id.*  The Defendants assert that the same principles apply here.

14

The Defendants note that liability discovery just ended but damages discovery does not close until February 2021, so a stay at this stage of the litigation is appropriate.  They point to *ArrivalStar S.S. v. Canadian Nat'l Ry. Co.*, where the court concluded, "[c]ourts frequently issue stays pending reexamination . . . even where significant, costly discovery has already taken place, but where substantially no trial preparations have been carried out." 2008 U.S. Dist. LEXIS 60588, at *8 (N.D. Ill. July 25, 2008).

The Defendants argue that there is no risk of undue prejudice by a stay because this case does not involve injunctive relief; rather, it involves damages alone, and the Defendants have stopped manufacturing and selling the allegedly infringing products, so any delay from a stay will not create an undue prejudice to the Plaintiffs.  "It is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice."  *Hill-Rom Servs.*, 2012 WL 5878087, at *2. The Defendants assert that the Plaintiffs will not be "unduly prejudiced" or "tactically disadvantaged" by litigating this case with the benefit of the PTO's rulings.

The Defendants argue that 79% of *ex parte* reexaminations result in claims being cancelled or changed (*see* Filing No. 674-3 at 3), and therefore, the PTO's reexamination will likely simplify and streamline the issues for this Court to resolve.  For example, in this case, the Defendants assert, "Claim 11 is the only remaining asserted claim of the '210 patent.  Claim 11 is a dependent claim and incorporates claim 10, which the PTO has already cancelled as unpatentable over the prior art." (Filing No. 674-1 at 14.) Thus, there is a good likelihood that the Plaintiffs "will amend, or that the PTO will entirely cancel, claim 11 of the '210 Patent during the currently proceeding reexamination."  *Id.*  And even if the claims remain unchanged after reexamination, the Court would have the benefit of the PTO's expert analysis of the prior art and guidance for the *Markman*

hearing, providing simplification and streamlining.  The Defendants assert this further supports a

stay of the case.

Regarding the last factor for consideration of a stay, the Defendants argue,

Granting a stay during the PTO's *ex parte* reexamination of at least one, and
possibly all, of Knauf's utility patents likely would save enormous party and judicial
resources. For the same reasons that litigation may be simplified—the high
probability that claims will be cancelled or altered—a stay would also reduce the
burden of litigation.

*Id.* at 15. They point to the court's decision in *King Sheng*:

As is true in any case in which a stay pending reexamination is requested, it is
impossible to know at this point the extent to which the reexamination process
ultimately will alter the litigation of this case, or even if it will at all. It is clear,
however, that there is a possibility that it will reduce or even eliminate the burden
of litigation on the parties and the Court.

2018 U.S. Dist. LEXIS 20742, at *5–6.

Without a stay, the Court and parties risk "dedicating significant time, money, and attention

to determining the validity and infringement of patent claims that may change, if they survive at

all. The reexamination therefore could render the entire litigation moot or require re-litigation of

most or all of the case." (Filing No. 674-1 at 16.) Thus, the Defendants argue, the Court should

grant a stay of the case to reduce the burden of litigation on the parties and the Court.

Responding to the Motion to Stay, the Plaintiffs point out the old age of this case, having

been initiated in January 2015, and the fact that the case has been previously stayed and delayed

by the Defendants for *inter partes* review proceedings and discovery issues as well as *Markman*

hearing issues.  During the pendency of this drawn-out litigation, the Plaintiffs have successfully

defeated the Defendants' two separate retaliatory lawsuits they filed against the Plaintiffs.  And

this case already has had three trial settings: December 2, 2019, January 25, 2021, and the current

trial date of June 14, 2021.  The Plaintiffs argue that it is past time for them to have their claims

adjudicated.  If a stay is granted, this case will likely be delayed for trial to 2025 or 2026 based on the information the Defendants provided with their Motion, which shows the average duration of *ex parte* reexamination proceedings to be 25.8 months (Filing No. 674-3 at 3).  The Plaintiffs argue the Defendants could have filed the *ex parte* reexamination proceeding at least four years ago, but they did not do so. They argue that the Defendants have not demonstrated any likelihood of receiving a favorable outcome on the issues and the issues raised in the *ex parte* reexamination are not dispositive of the parties' claims and defenses in this case.

The Plaintiffs contend this case is not in its infancy as the Defendants suggest, and the Court and the parties have expended significant resources in this litigation.  Liability discovery is closed with very significant discovery having been completed.  Almost 700 filings are on the case's docket.  The claim construction process was previously briefed in 2019 and is set to resume again at the end of July 2020.  The Plaintiffs assert that many other courts have denied a stay at this late stage of the litigation, even after a reexamination request has been made. In support of this assertion, the Plaintiffs point to the decisions of four other district courts (*see* Filing No. 683 at 4–5).  The Plaintiffs argue the delay tactics amount to a tactical disadvantage against them, where the Defendants receive unfavorable decisions and retaliate with PTO proceedings in an attempt to grind this case to a halt.

The Plaintiffs also assert that the Defendants are trying to inflict a tactical disadvantage on them by blocking highly relevant and persuasive evidence from being presented to the PTO in the reexamination proceedings.  That evidence was discovered in this case and will be presented in this case, but the Defendants are trying to block the evidence from being presented to the PTO. This further shows the Defendants' efforts to impose a tactical disadvantage by its actions.  The Plaintiffs assert they will be further disadvantaged by a stay because many witnesses, experts, and

attorneys are currently preparing this case for trial, and fading memories or unavailability of witnesses after years of delay will be prejudicial.

Regarding the factor of simplifying or streamlining the issues before the Court, the Plaintiffs argue,

> This Reexamination will not dispose of all of the claims and "[m]any courts deny stays when the reexamination will not resolve all of the issues in the litigation . . ." *Tomco2 Equip. Co. v. S.E. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1310 (N.D. Ga. 2008); *Milwaukee Elec. Tool Corp.*, 2012 U.S. Dist. Lexis 195105, at *8 ("Although the reexamination may simplify three of the seven patents, the inability of the reexamination to simplify all seven of the patents indicates that the case will not be simplified by reexamination."). JM has not made any representations that it is pursuing reexamination of the asserted claim of the D'670 design patent (indeed, such claims are barred by 35 U.S.C. § 315(e)(1) and JM's prior failed *Inter Partes* Reviews.) The fact that not all patents are addressed by reexamination requests means that the case will not be simplified. *See, e.g., Milwaukee Elec. Tool Corp.*, 2012 U.S. Dist. LEXIS 195105, at *8 ("[M]any courts deny stays when the reexamination will not resolve all the issues in the litigation . . . ." (quoting *Tomco2 Equip. Co.*, 542 F. Supp. 2d at 1310)). This is particularly so when (as here) invalidity would continue to be an issue unless all of the asserted claims were cancelled. *IMAX Corp.*, 385 F. Supp. 2d at 1033.

(Filing No. 683 at 9.)

Only one claim in one patent-in-suit has been granted reexamination by the PTO; there are numerous asserted claims in various patents that remain in this litigation and will be unaffected by any PTO decision.  Furthermore, "[t]he PTO's decisions on whether to grant reexamination for the '207, '287, and '464 Patents are not even due until October 19, 2020, after the close of expert liability discovery and the same date final witness and exhibit lists are due under the current scheduling orders." *Id.* at 10. Thus, the Plaintiffs argue, the issues will not be simplified or streamlined.

Pointing to the litigation history of this case, the Plaintiffs note,

> Five years ago, JM cited the statistics for *Inter Partes* Review, claiming that a 16% "survival rate" meant this case would be streamlined, ECF No. 41 at 12-13, but as previously stated, only one asserted claim out of hundreds was eliminated as a result

of the prior proceedings and stay. Here, the statistics relied on by JM indicate that 20.7% of reexamination certificates confirm all claims and an additional 66.6% issue with just some changes to the claims – only 12.7% cancel ***all*** claims. See Exhibit 2256, ECF No. 674-3, at 2. This suggests that reexamination is actually even more favorable to Knauf than the *Inter Partes* Review process which served as the basis for JM's prior failed "streamlining" attempt.

*Id.* at 10–11.

The Plaintiffs argue that the burden of litigation will not be lightened by a stay and the reexamination proceedings because there is a very high likelihood that reexamination will not change the claims or defenses presented at trial. Even if claim 11 of the '210 patent was cancelled, the Plaintiffs' numerous other claims will proceed to trial. Liability discovery has closed, and the parties are proceeding with damages discovery, which will need to be completed regardless of the outcome of the reexamination proceedings.

In reply, the Defendants assert,

> [T]he breadth of the PTO's review, and thus the basis for [the Defendants'] motion, has only expanded recently. After first instituting an *ex parte* reexamination against claim 11 of the '210 Patent on three separate substantial new questions of patentability in April 2020, just last week the PTO also granted [the Defendants'] request for *ex parte* reexamination of three claims in U.S. Patent No. 9,828,287 ("the '287 Patent"). Ex. 2264. Indeed, the PTO not only agreed that [the Defendants'] petition presented two substantial and new questions of patentability on the challenged claims, but also *sua sponte* determined that those same grounds require reexamination of another nine claims in the '287 Patent that [the Defendants] had not challenged. *See id.*

> In short, any trial will be simpler, better informed, and immeasurably less likely to be mooted if it follows, rather than precedes, the PTO's analysis.

(Filing No. 693 at 2.)

The Defendants distinguish this case from the four district court decisions the Plaintiffs rely on for denial of a stay at this stage of the litigation. Those other cases involved an ongoing threat of continuing infringement, which is not present here because the Defendants have ceased

manufacturing and selling the allegedly infringing product. This case involves only past infringement, so a stay during reexamination proceedings would not be prejudicial to the Plaintiffs.

The Defendants assert a delay will not result in prejudice based on lost evidence as the Plaintiffs suggest because liability discovery is complete; documents have been produced and witnesses have been deposed.  The Federal Circuit recently noted, "[i]t is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014).

Regarding simplifying the issues, the Defendants point out that case law relied upon by the Plaintiffs undercuts the Plaintiffs' argument that the reexamination proceedings do not involve all claims in this litigation.  "The benefits of a stay certainly exist where all of the claims are under review, and would even exist if only *some* of the litigated claims were undergoing review." *Trading Techs. Int'l, Inc v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 874 (N.D. Ill. 2016) (emphasis in original).  Damages discovery still needs to be conducted, and even if only some of the claims are narrowed by the reexamination proceedings, then the necessary discovery for damages and what will eventually be presented at trial will be affected.

The Court begins by noting the old age of this case, which was initiated in January 2015. Looking at the date of the initial filing of the Complaint, it would be hard to characterize this case as being in its "infancy".  However, looking at the substance of the stages of litigation, the case is still relatively young in its progression.  Fact discovery on liability issues recently closed, but expert liability discovery has not yet closed, and damages discovery does not close until next year. Dispositive motions have not yet been filed, and briefing on claim construction and dispositive

motions will take place in the coming months. Even though this case has been pending for more than five years, based on what has occurred in the case and what remains to be done in the case, the "stage of litigation" factor weighs in favor of granting a stay of the litigation.

The Court also concludes that the "undue prejudice" or "tactical disadvantage" factor does not weigh against a stay. This conclusion is significantly based upon the facts that this case involves damages for past infringement, not a request for injunctive relief against ongoing infringement, and the Defendants stopped manufacturing and selling the allegedly infringing product.  As other courts have concluded, "It is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice."  *Hill-Rom Servs.*, 2012 WL 5878087, at *2; *see also King Sheng*, 2018 U.S. Dist. LEXIS 20742, at *6–7 ("potential delay inherent in any stay" is insufficient to show undue prejudice).

The Court notes that any delay from the reexamination proceedings appears to be shorter than suggested by the Plaintiffs.  The Plaintiffs asserted that the PTO's decisions on whether to grant reexamination for the '207, '287, and '464 patents are not due until October 19, 2020. Yet, as pointed out in the Defendants' reply, the PTO granted reexamination of the '287 patent on July 17, 2020 (Filing No. 693-2), three months faster than suggested by the Plaintiffs and only one month after the Defendants requested the reexamination.  Any potential prejudice from fading memories or unavailability of witnesses because of a stay appears to be minimal.  Fact liability discovery has been completed, with the parties producing voluminous documents and preserving witness testimony through depositions.  The Court does not see "undue prejudice" to the Plaintiffs resulting from a stay.  Moreover, the Court does not intend  that this stay extend so long as to result in undue prejudice. If the length of the stay evolves into an unreasonable length of time—as suggested by the Plaintiffs—on its own, the Court can rescind this Order and lift the stay.

The Plaintiff is correct that the Defendants could have filed their *ex parte* request for reexamination years' ago.  Even so, a stay might simplify the issues in question and streamline the trial because the reexamination proceedings may narrow the claims and issues before the Court. Because of the stage of this litigation, this potential narrowing of claims and issues will affect the claim construction, dispositive motions, damages discovery, and trial of this matter. This is significant. This also goes to the factor of reducing the burden of litigation on the parties and the Court. Even if the claims are not cancelled or changed through the PTO's reexamination proceedings, the Court agrees with the Defendants that the proceedings will provide helpful guidance for claim construction and other issues remaining in this litigation.  As one court noted, "[t]he benefits of a stay certainly exist where all of the claims are under review, and would even exist if only *some* of the litigated claims were undergoing review." *Trading Techs. Int'l*, 186 F. Supp. 3d at 874 (emphasis in original).

The Court echoes what another district judge from this District stated: "[w]hile this Court is generally reluctant to stay litigation, it recognizes that stays are often favored in patent infringement suits involving co-pending reexamination of the patents-in-suit by the PTO."  *Hill-Rom Servs.*, 2012 WL 5878087, at *1.  For the foregoing reasons, the Court concludes that the factors it must consider when determining the propriety of a stay weigh in favor of staying this litigation during the pendency of the PTO's reexamination proceedings. Therefore, the Court **grants** the Defendants' Motion to Stay Case.

## IV.    CONCLUSION

For reasons stated above, the Defendants' Motion to Certify Order for Interlocutory Appeal, (Filing No. 664), is **DENIED** and the Motion to Stay Case, (Filing No. 674), is **GRANTED**. This case is **stayed** during the pendency of the *ex parte* reexamination proceedings before the PTO or

until otherwise lifted by the Court. The parties shall confer and file a joint notice regarding the

status of the *ex parte* reexamination proceedings by no later than **October 31, 2020**.

**SO ORDERED.**

Date:  7/24/2020

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Melissa J. Baily
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
melissabaily@quinnemanuel.com

Catherine R. Lacey
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
catylacey@quinnemanuel.com

Kevin M. Bell
KILPATRICK TOWNSEND & STOCKTON
LLP
kbell@kilpatricktownsend.com

Tina T. Lo
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
tinalo@quinnemanuel.com

Spiro Bereveskos
WOODARD EMHARDT HENRY REEVES &
WAGNER, LLP
judy@uspatent.com

Daniel James Lueders
WOODARD EMHARDT HENRY
REEVES & WAGNER, LLP
lueders@uspatent.com

Briana Lynn Clark
DENTONS BINGHAM GREENEBAUM LLP
(Indianapolis)
briana.clark@dentons.com

Brice C. Lynch
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
bricelynch@quinnemanuel.com

Lindsay Cooper
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
lindsaycooper@quinnemanuel.com

Edward J. Mayle
KILPATRICK TOWNSEND &
STOCKTON LLP
TMayle@kilpatricktownsend.com

Duane R. Denton
DENTONS BINGHAM GREENEBAUM LLP
(Indianapolis)
rusty.denton@dentons.com

Andrew M. Pendexter
DENTONS BINGHAM GREENEBAUM
LLP (Indianapolis)
andrew.pendexter@dentons.com

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Kristopher L. Reed
KILPATRICK TOWNSEND &
STOCKTON LLP
kreed@kilpatricktownsend.com

Matthew M. Gardlik
WOODARD EMHARDT HENRY REEVES &
WAGNER, LLP
mgardlik@uspatent.com

Ella K. Hallwass
QUINN EMAUEL URGUHART & SULLIVAN
LLP
ellahallwass@quinnemanuel.com

Blake R. Hartz
WOODARD EMHARDT HENRY REEVES &
WAGNER, LLP
bhartz@uspatent.com

David D. Doak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

James W. Riley, Jr.
RILEY BENNETT EGLOFF LLP
jriley@rbelaw.com

Charles Verhoeven
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
charlesverhoeven@quinnemanuel.com

Travis D. Whitsitt
KILPATRICK TOWNSEND &
STOCKTON LLP
twhitsitt@kilpatricktownsend.com

Lance Yang
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
lanceyang@quinnemanuel.com