UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KNAUF INSULATION, LLC, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOHNS MANVILLE CORPORATION, et al., )<br>)<br>Defendants. ) | No. 1:15-cv-00111-TWP-MJD |

**ORDER ON MOTION TO STAY**

This matter is before the Court on Defendants' Motion to Stay Case, [Dkt. 1004]. For the reasons set forth below, the motion is **DENIED**.

**I.  Background**

This case was filed eight years ago, on January 27, 2015. Plaintiffs alleged infringement of U.S. Patents Nos. 8,114,210 ("the '210 patent"), 8,940,089 ("the '089 patent"), and D631,670 ("the '670 patent"). [Dkt. 1.] On September 3, 2015, Plaintiffs filed a Second Amended Complaint to add allegations that Defendants had also infringed U.S. Patents Nos. 9,039,827 ("the '827 patent") and 9,040,652 ("the '652 patent"). [Dkt. 60.]

Between June 2015 and August 2015, Defendants petitioned the United States Patent and Trademark Office ("PTO") to initiate *inter partes* review ("IPR") of the '210, '089, '670, and '827 patents. *See* [Dkt. 41]. Defendants moved to stay this case pending the IPR proceedings. [Dkt. 40.] That motion was granted, [Dkt. 81], and from November 13, 2015, to October 12, 2017, the

case was stayed.  The IPR proceedings ultimately culminated in the cancellation of seven claims of the '210 patent.  *See* [Dkt. 674-5].

During the stay, Plaintiffs were granted leave to file a Third Amended Complaint, which added claims relating to two additional patents, U.S. Patent Nos. 9,464,207 ("the '207 patent") and 9,469,747 ("the '747 patent").

The litigation of this case proceeded from October 12, 2017, until July 24, 2020, when Defendants' second motion to stay was granted.  [Dkt. 694.]  That motion was based on the fact that Defendants had requested *ex parte* reexamination of several of the patents at issue in the case and, at that point, the PTO had granted one of their requests.  *See* [Dkt. 674-1].

This case was reopened on October 1, 2021.  [Dkt. 762.]  The *ex parte* reexamination proceedings that were the basis for the stay were complete, and the PTO had confirmed the patentability of each of the patents at issue in those proceedings.  *See* [Dkt. 754].   Litigation of the case resumed.  Extensive summary judgment and claim construction motions were briefed, and a *Markman* hearing and oral argument on the motions were held on June 22, 2022.  Those motions remain pending.

On November 23, 2022, the instant motion to stay was filed.  [Dkt. 1004.]  At that time, the trial in this case was scheduled to begin on February 21, 2023.  The parties' initial pretrial filings were due, and were filed, on January 4, 2023.  *See* [Dkt. 1015 through Dkt. 1044].  On January 9, 2023, Chief Judge Pratt continued the trial to August 28, 2023.  [Dkt. 1050.]

## II.  Discussion

In the instant motion, Defendants seek to stay this case for a third time.  The basis of their motion is the fact that, between July 14, 2021, and December 17, 2021, Defendants filed six

requests for *ex parte* reexaminations, one for each of the six utility patents at issue in this case.[1] The PTO examiners who reviewed the requests—the same examiners who conducted the prior *ex parte* reexaminations of the patents at issue in this case—found that "the arguments and prior art in [Defendants'] 2021 requests raised substantial new questions about the patentability of [Plaintiffs'] asserted utility patent claims not addressed in any prior proceeding." [Dkt. 1004-1 at 13.] In orders issued between August 27, 2021, and February 1, 2022, the PTO granted each request for reexamination. See [Dkt. 1004-3, 1004-4, 1004-5, 1004-18, 1004-19, and 1004-20.]

In addressing Defendants' last motion to stay, Chief Judge Pratt recognized that "courts have inherent authority and broad discretion to manage their dockets and stay proceedings, which includes the authority to stay a case pending resolution of related proceedings before the PTO." [Dkt. 694 at 4] (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).

> [T]he relevant factors to be considered by the Court in deciding whether a stay is appropriate during the reexamination process [are]: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court. *King Sheng Co. v. Hollywood Eng'g, Inc.*, 2018 U.S. Dist. LEXIS 20742, at *3 (S.D. Ind. Feb. 8, 2018). Courts also consider "whether the litigation is at an early stage." *Endotach LLC v. Cook Med., Inc.*, 2014 U.S. Dist. LEXIS 27802, at *8 (S.D. Ind. Mar. 5, 2014).

*Id.* at 4-5.

### A. Undue Prejudice

Chief Judge Pratt found in her prior ruling that the first factor, whether a stay would unduly prejudice or tactically disadvantage the non-moving party, did not weigh against granting a stay. She noted that there is no ongoing threat of continuing infringement in this case, because

---

[1] The '670 patent, which is a design patent, is not at issue in the reexamination proceedings.

the Defendants have ceased manufacturing and selling the allegedly infringing product. As Defendants note, because this case involves only past infringement and any judgment will include prejudgment interest, a stay during reexamination proceedings would not be prejudicial to the Plaintiffs in a monetary sense. [Dkt. 1004-1 at 7.]

Plaintiffs argue in their response to the instant motion that they would be prejudiced by a stay at this late stage of the case, noting that Defendants could have sought reexamination earlier and could have moved to stay promptly after seeking reexamination.[2] Instead, Plaintiffs note, Defendants were "silent as the parties and the Court advanced the case toward trial, including: completing liability expert depositions and damages fact and expert discovery, summary judgment and claim construction briefing including a five-hour hearing before the Court, and ten Daubert motions." [Dkt. 1005 at 5.] This argument relates to the late stage of this litigation, a factor which is addressed below.

Plaintiffs also point to the likely length of a stay as prejudice; however, as Chief Judge Pratt noted in her prior ruling, "'[i]t is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice.'" [Dkt. 694 at 21] (quoting *Hill-Rom Servs., Inc. v. Stryker Corp.*, 2012 WL 5878087, at *2 (S.D. Ind. Nov. 20, 2012), and citing *King Sheng*, 2018 U.S. Dist. LEXIS 20742, at *6-7 ("potential delay inherent in any stay" is insufficient to show undue prejudice)). Plaintiffs have not demonstrated that the "undue prejudice" or "tactical disadvantage" factor weighs against the requested stay.

---

[2] It is true that Defendants did not seek a stay for over a year after the first of the relevant reexamination requests was granted. However, as Defendants point out, Plaintiffs had opposed the reexaminations, and the instant motion was filed the day after Plaintiffs' petition for a writ of mandamus was denied by the Federal Circuit, which allowed the reexaminations to proceed. *See* [Dkt. 1004-24].

### B. Remaining Factors

The remaining relevant factors are all intertwined, and the Court will consider them together. Far from being at an early stage, this case is in its final stage. Discovery is complete. Dispositive motions have been briefed and argued. Substantial trial preparation has occurred. There is no doubt that the late stage of this case weighs heavily in favor of denying the requested stay.

Defendants argue that a stay would nonetheless likely reduce the burden of litigation on the parties and the court by eliminating some of the issues that would otherwise have to be addressed in the pending dispositive motions and/or at trial. *See* [Dkt. 1007 at 8-9] (chart listing "pending motions or parts thereof that touch on the patents being reexamined"). Defendants also argue that "the PTO's rulings could equally streamline or eliminate numerous pending Daubert motions to exclude certain expert opinions tied specifically or exclusively to the issues presented by the utility patent claims now before the PTO." *Id.* (citing seven pending motions in limine).

While it is certainly possible that the *ex parte* reexaminations could result in the elimination of some of the issues in this case, that result is far from guaranteed; indeed, the two prior stays in this case have not served to substantially narrow the scope of the case. On the other hand, the Court has already invested substantial resources toward resolving the dispositive motions. If those motions were to be put on hold indefinitely, significant effort would be required to reacquaint the Court with the complex issues in the case after the stay was lifted and the motions, or the remaining portions of them, were once again ready for resolution. In other words, there is a great deal of momentum pushing this case toward trial; disrupting that momentum with another stay would be highly inefficient and not in the interests of judicial economy.

Granting a stay at this stage of the litigation would essentially be a gamble; the Court would be betting that the probability that the parties and the Court would benefit from the stay outweighed any potential downside from the stay. Defendants argue that this would be a safe bet because "nearly eighty percent of *ex parte* reexaminations result in claims being cancelled or changed." [Dkt. 1004-1 at 21.] But that does not equate to an eighty percent chance that the result of the *ex parte* reexaminations will significantly simplify the resolution of this case. The odds of that happening are, frankly, unknowable at this point. On the other hand, there is no question that a stay would result in substantial cost in the form of the loss of momentum discussed above. Given that fact, the Court finds that the factors of whether a stay will simplify the issues in question and streamline the trial and whether a stay will reduce the burden of litigation on the parties and the Court both weigh against granting the requested stay.

### III. Conclusion

Having reviewed the relevant factors, the Court, in its discretion, finds that a third stay of this case is not appropriate. Accordingly, Defendants' Motion to Stay Case, [Dkt. 1004], is **DENIED**.

SO ORDERED.

Dated: 27 JAN 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.