**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| KNAUF INSULATION, LLC,<br>KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. 1:15-cv-00111-TWP-MJD |
| JOHNS MANVILLE CORPORATION,<br>JOHNS MANVILLE, INC., | )<br>)<br>) | |
| Defendants. | )<br>) | |
| JOHNS MANVILLE CORPORATION,<br>JOHNS MANVILLE, INC., | )<br>)<br>) | |
| Counter Claimants, | )<br>) | |
| v. | )<br>) | |
| KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL,<br>KNAUF INSULATION, LLC, | )<br>)<br>) | |
| Counter Defendants. | )<br>) | |

**ENTRY ON PLAINTIFFS' MOTION IN LIMINE**

Before the Court is Plaintiffs, Knauf Insulation, Inc., Knauf Insulation GmbH, and Knauf

Insulation SPRL's (collectively, "Knauf") Motion *in Limine* to preclude Dr. Susan Kare's ("Dr.

Kare") and Dr. Christopher Pastore's ("Dr. Pastore") from offering certain testimony regarding the

invalidity of U.S. Design Pat. No. D631, 670 ("D' 670") because their opinions are, among other

things, contrary to law (Filing No. 923). The Defendants, Johns Manville Corp. and Johns

Manville, Inc. (collectively, "JM") responded and Knauf replied (Filing No. 946; Filing No. 961).

## I.    FACTUAL BACKGROUND

The parties are competitors in the fiberglass insulation product market.[1] In 2005, while employed by Knauf, Dr. Brian Swift ("Dr. Swift"), developed a sugar-based insulation binder having a brown appearance (Filing No. 883 at 3). After Dr. Swift left Knauf in 2007, Dr. Roger Jackson's ("Dr. Jackson") worked to improve the appearance of the insulation. *Id*. When Knauf filed an application with the United States Patent and Trademark Office (the "PTO") for the D'670 patent, it listed Dr. Jackson as the sole inventor. *Id*. Knauf submitted a declaration from Dr. Jackson explaining that he was the original and first inventor. JM then accused Knauf of withholding prior art, Dr. Swift's insulation, from the PTO. *Id*. JM claimed that had the PTO been aware of Dr. Swift's prior art, the PTO would not have issued the design patent. *Id*. Thereafter, Knauf petitioned the PTO to "change the inventor on the D'670 patent from Dr. Jackson to Dr. Swift on the basis that naming Dr. Jackson as the inventor was an error." *Id*. at 4. Dr. Jackson and Dr. Swift submitted statements in support of the correction. *Id*.

On June 12, 2020, JM sought discovery from Knauf regarding the inventorship of the D'670 design patent, the change of inventorship, and the correction before the PTO (Filing No. 655). However, that request was denied by the Magistrate Judge and this Court affirmed that decision (Filing No. 747; Filing No. 883). Knauf now seeks to preclude Drs. Kare and Pastore from making certain statements regarding the intent of the inventor, and the functionality or ornamentality of the D'670 design patent (Filing No. 923).

---

[1] *See Knauf Insulation, LLC v. John Manville Corporation*, 2022 WL 2092923, at *2 (S.D. Ind. June 10, 2022) (TWP).

## II.   LEGAL STANDARD

### A.   Motion *in Limine*

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Judges have broad discretion when ruling on motions in *limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, evidence may be excluded on a motion in *limine* only when the evidence is inadmissible on all potential grounds. *Townsend v. Benya*, 287 F.Supp.2d 868, 872 (N.D. Ill. 2003). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence in *limine* has the burden of establishing that the evidence is not admissible for any purpose. *Robenhorst v. Dematic Corp.*, 2008 WL 1821519, at *3 (N.D. Ill. Apr. 22, 2008).

### B.   Expert Opinions

Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony. Expert opinions must be reliable and helpful. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Expert testimony is admissible under Rule 702 if technical or specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. at 579. District courts act as gatekeepers and must ensure that expert testimony "is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Relevant factors in this determination include testing, peer review, error rates, and acceptance by the relevant expert

community. *See Daubert*, 509 U.S. at 593–94. The reliability inquiry is flexible, however, and not all of these factors will apply in every case. *See Kumho*, 526 U.S. at 141.

In assessing the admissibility of expert opinions, courts do not focus on "the ultimate correctness of the expert's conclusions," *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013), but "solely on principles and methodology," *Daubert*, 509 U.S. at 595. The "soundness of the factual underpinnings" and "correctness of the expert's conclusions" may affect any ultimate determination on the merits, but do not govern admissibility. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718–19 (7th Cir. 2000). The expert must explain his or her methodology and cannot "simply assert a bottom line." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

Additionally, the district court must determine whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).

> Vigorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence. The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 933 (N.D. Ill. 2006) (citations and quotation marks omitted).

"Expert opinions that are contrary to law are inadmissible." *In re Dealer Management Systems Antirust Litigation*, 581 F.Supp.3d 1029, 1063 (N.D. Ill. 2022) (quoting *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 806 (N.D. Ill. 2005)). Seventh Circuit law governs this Motion to Exclude, as opposed to Federal Circuit law, because the admission of

expert witnesses is a procedural matter and is not unique to patent law. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

### III.    DISCUSSION

The Court will first address both Drs. Kare's and Pastore's opinions regarding intent, aesthetics, and ornamentality, then address Dr. Pastore's opinion regarding functionality.

### A.    Opinions Regarding Intent

Knauf seeks to preclude both Drs. Kare and Pastore from opining upon the motivation or intent of the inventor when discussing the ornamentality of the D' 670 design patent (Filing No. 923 at 1). Knauf seeks to exclude the follow paragraphs from Dr. Kare's report: ¶¶ 35-37, 77, 83, 85, 86, 92, 93, 95, 99-104, 106-108. *Id.* at 9. Knauf also seeks to exclude the following paragraphs from Dr. Pastore's report: ¶¶ 45, 171, 173-185. *Id*. Knauf argues that these opinions are contrary to law.

The Patent Act allows for design patent protection only to a person who "invents a new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. The "inventor," in patent law, is the person or persons who conceived the patented invention. *Collar Co. v. Van Dusen*, 90 U.S. (23 Wall.) 530, 563–64 (1874); *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994) ("Conception is the touchstone of inventorship.") Thus, facts relevant to inventorship are those showing the conception of the invention, for others may provide services in perfecting the invention conceived by another without becoming an "inventor" by operation of law. *Id*.; *Agawam Co. v. Jordan*, 74 U.S. (7 Wall.) 583, 602–04 (1868). As explained in *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985), "an

inventor may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent."

Here, JM contends that "Dr. Kare considered numerous facts in this case from a designer's perspective to see whether there was any evidence that the D' 670 patent was the result of an intentional desire by an inventor to create an ornamental design, or whether it was the chance result of the process used to make it, with the resultant design being a mere byproduct." (Filing No. 946 at 8.) Dr. Kare then opined that "each piece of evidence weighed in favor of the design being the chance result of the chemical and physical processes involved, and further that these inputs and constraints were conceived from a scientific and engineering perspective, not from aesthetic design goals." (Filing No. 870-16 at ¶ 77.) Dr. Pastore espoused similar views as Dr. Kare with respect to the intent of the inventor (Filing No. 846-1 at ¶¶ 45, 171, 173-185).

Knauf relies on 35 U.S.C. § 103 which states that "[p]atentability shall not be negated by the manner in which the invention was made." (Filing No. 946 at 9.) However, this sentence is taken from the section of the Patent Act that refers to the obviousness[2] of an accused product and does not address the issue of inventorship or ornamentality. *See Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 369 U.S. 57, 62 (1969) (finding that "the section was intended merely as a codification of judicial precedents embracing the *Hotchkiss*[3] condition, with congressional directions that inquiries into the obviousness of the subject matter sought to be patented are a prerequisite to patentability.'"). Knauf also relies on *Gorham Mfg. v. White*, 81 U.S. 511, 524-25 (1872*)*, where the Supreme Court noted that,

---

[2] Obviousness is a question of law based on the following factual determinations: "(1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010).

[3] *Hotchkiss v. Greenwood*, 52 U.S. 248 (1850).

> It is the appearance itself, therefore, no matter by what agency caused, the constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly, *but, in whatever way produced, it is the new thing, or product, which the patent law regards*.

81 U.S. 511, 525 (1871) (emphasis added). Put differently, patent law protects the product's appearance and not the process that led to its creation.

However, the United States Court of Customs and Patent Appeals, in *In re Stirling*, noted that the question in *Gorham* was as to "similarity of appearance—sameness of effect upon the eye" and did not relate to the question of inventorship:

> When, therefore, the court spoke of the 'appearance in whatever way produced,' manifestly it was not considering, or thinking of, how the article was made, or whether the design was originally a conception of the mind, but whether the alleged infringer by 'some peculiarity of configuration, or of ornament alone, or of both conjointly' had produced an article which so resembled the finished product of the patentee's invention as to infringe same.

47 F.2d 809 (C.C.P.A. 1931).

Knauf also cites to a quote from *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000), where the court stated, "the path that leads an inventor to the invention is expressly made irrelevant to patentability by statute." (Filing No. 923 at 2.) However, the Court does not find this persuasive for the same reasons it did not find 35 U.S.C. § 103 persuasive. In fact, the *Life Techs* court was citing directly to § 103. Furthermore, as the *Life Techs* court noted, when considering the obviousness of the claimed product:

> The only inquiry is whether the teachings of the Johnson article, in combination with other relevant prior art, would have rendered the claimed invention obvious to one of ordinary skill in the art this inquiry, as a matter of law, is independent of the motivations that led the inventors to the claimed invention.

*Life Techs*, 224 F.3d at 1325.

Knauf lastly cites to *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356 (Fed. Cir. 2017). However, as the *Millennium* court noted, "[t]he inventor's own path itself never leads to a conclusion of obviousness; that is hindsight." *Id*. at 1367. There, the Court was again not discussing the issue of inventorship or ornamentality but rather the obviousness of the product from the prospective of the objective observer.

The Court is persuaded that both Drs. Kare's and Pastore's opinions regarding the way the D' 670 design patent was created is relevant to the issue of who created it and both testimonies will assist the jury in resolving the issues in the case. On the other hand, the Court is not convinced that such testimony would be contrary to law. Therefore, Drs. Kare or Pastore shall not be precluded from offering testimony in this regard and Knauf's motion in this respect is **denied**.

## B.     Opinions Regarding Aesthetics

Knauf also moves to exclude portions of Drs. Kare's and Pastore's opinions that a design patent must present an aesthetically pleasing appearance (Filing No. 923). In this regard, Knauf requests the Court exclude the following paragraphs of Dr. Kare's report: ¶¶ 30, 35, 77, 85, 91, 99, 104. *Id*. at 9. Knauf also seeks to exclude the following paragraphs of Dr. Pastore's report: ¶¶ 42, 177-178. *Id*.

A design patent concerns the appearance of an article of manufacture, and it protects the nonfunctional aspects of an ornamental design as shown in the patent. *See Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999). The design need not be aesthetically pleasing; the 'ornamental' requirement means that "the design must not be governed solely by function, that is, this is not the only possible form of the article that could perform its function." *Id*. Here, JM contends that its experts did not conclude that the D' 670 design patent is invalid on the basis that it is not aesthetically pleasing. (Filing No. 946 at 12). However, while JM's experts

8

may not have specifically concluded that the design patent is invalid because it is not aesthetically pleasing, their continual reference to the non-aesthetically pleasing nature of the accused product is inappropriate, may cause confusion and will not assist the jury. The requirement that a design patent be "aesthetically pleasing" is not found in statute. 35 U.S.C. § 171(a) (requiring that the inventor develop a "new, original and ornamental design for an article of manufacture."). Similarly, this requirement is not supported by case law. See *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999) (noting that the design need not be aesthetically pleasing); *see also Prestige Jewelry International, Inc. v. BK Jewellery HK*, 2014 WL 11344395, at * 7 (S.D. N.Y. Sep. 15, 2014) (same).

JM also argues *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989) and *Gorham* are controlling (Filing No. 946 at 11-12). The Court disagrees. JM relies on a sentence from *Bonito* which states that "To qualify for protection, a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria of patentability." *Bonito*, 489 U.S. at 148. JM similarly relies on two quotes from *Gorham* to support its position (Filing No. 946 at 11-12). However, the Court finds both cases unpersuasive. Knauf correctly notes, *Bonito* concerned a federal preemption of state intellectual property law and the sentence relied upon by JM is uncited dicta that *Seiko* did not follow and, as such, this Court agrees to accord it no weigh. As for *Gorham*, there is no indication that the Supreme Court created such a standard and this Court sees no reason to create one today. Therefore, the Court **grants** Knauf's motion *in limine* to preclude this testimony.

## C.   Opinions Regarding Ornamentality

Knauf next moves to exclude Drs. Kare's and Pastore's opinions regarding the fact that the D' 670 design patent is not ornamental because the insulation materials are 'hidden- in-use' (Filing

No. 923). Specifically, Knauf seeks to exclude the following paragraph of Dr. Kare's report: ¶¶ 78-82, 85 (Filing No. 923 at 9). Knauf also seeks to exclude the following paragraphs of Dr. Pastore's report: ¶¶ 46, 73, 177. *Id*.

Because a key requirement of a design patent is ornamentation, "[a]rticles which are concealed or obscure[d] are not proper subjects for design patents, since their appearance cannot be a mater of concern." *In re Stevens*, 36 C.C.P.A. 1017, 173 F.2d 1015, 1016 (C.C.P.A. 1949) (as quoted in *In re Webb*, 916 F.2d 1553, 1557 (Fed. Cir. 1990)). Citing cases such as *Stevens*, the Federal Circuit has set forth the parameters of § 171's ornamentation requirement in *In re Webb*:

> We read those cases to establish a reasonable general rule that presumes the absence of ornamentality when an article may not be observed. *This is a sound rule of thumb, but it is not dispositive.... In each case, the inquiry must extend to whether at some point in the life of the article an occasion (or occasions) arises when the appearance of the article becomes a "matter of concern*."

916 F.2d 1553, 1557 (emphasis added) (citing *Larson v. Classic Corp.*, 683 F.Supp. 1202, 1202–03 (N.D. Ill. 1988)).

Here, while the insulation claimed in the D' 670 design patent is hidden in use, this does not create a presumption of ornamentality. As *Webb* expressed, this alone is not dispositive of the issue and the "inquiry must extend to whether at some point in the life of the article an occasion (or occasions) arises when the appearance of the article becomes a 'matter of concern,'" and "only the facts of specific cases will establish whether during that period the article's design can be observed in such a manner as to demonstrate its ornamentality." *Webb*, 916 F.2d at 1557. In *Webb* the court noted that,

> In short, we construe the "normal and intended use" of an article to be a period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article. Although the period includes all commercial uses of the article prior to its ultimate destination, only the facts of specific cases will establish whether during

that period the article's design can be observed in such a manner as to demonstrate its ornamentality.

*Id.*

Here, Knauf claims Drs. Kare and Pastore limits their analysis solely to the period after the insulation's installation and "fails to consider the period of sale and display, transportation, handling, and installation where insulation is visible to the customer." (Filing No. 961 at 6-8.) JM does not dispute this contention. While 'hidden-in-use' is a relevant factor regarding ornamentality, as explained by *Webb*, it is not the only factor or stage to consider when determining a product's ornamentality. Drs. Kare and Pastore were required to consider the entire life of the insulation after completion of manufacture to its purported disappearance and not just the latter event. Since they failed to consider the full life of the insulation, it cannot be said that their opinions on the 'hidden-in-use' nature and, in turn, the ornamentality of the insulation is complete and sufficient to assist the jury. The Court therefore **grants** Knauf's motion to exclude Drs. Kare's and Pastore's testimonies in this regard.

D.      **Dr. Pastore's Opinion Regarding Functionality**

Lastly, Knauf argues that Dr. Pastore's opinions on the issue of functionality should be excluded because Dr. Pastore failed to reach the conclusion that the D' 670 design patent is invalid as functional (Filing No. 923 at 7). Specifically, Knauf seeks to exclude the following paragraphs of Dr. Pastore's report: ¶¶ 42-46, 169-178. *Id.* at 9. However, the Court disagrees with Knauf.

There are a number of affirmative defenses an alleged infringer can parry with; one is a showing that the mark is "functional." *Specialized Seating, Inc. v. Greenwich Industries, L.P.*, 616 F.3d 722, 724, 2010 WL 3155922, at *1 (7th Cir. 2010). The Supreme Court, in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, found that a design is functional when it is "essential to the use or purpose of the device or when it affects the cost or quality of the device," 532 U.S. 23, 33 (2001),

a definition cribbed from *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850

n. 10 (1982). Under Rule 26(a), expert reports must be "detailed and complete." Fed.R.Civ.P. 26

Advisory Committee's note; *see also Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th

Cir. 1996), *cert. denied*, 519 U.S. 811 (1996).  A complete report must include the substance of

the testimony which an expert is expected to give on direct examination together with the reasons.

Fed.R.Civ.P. 26 Advisory Committee's note; *see also Smith v. State Farm Fire & Cas. Co.*, 164

F.R.D. 49, 53 (S.D. W. Va. 1995); *cf. Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 727 (7th Cir.

1996).

      The purpose of the report is to provide adequate notice of the substance of the expert's

forthcoming testimony and to give the opposing party time to prepare for a response. *Walsh v.

Chez*, 583 F.3d 990, 993 (7th Cir. 2009). The consequence of non-compliance with Rule

26(a)(2)(B) is "exclusion of an expert's testimony ... 'unless the failure was substantially justified

or is harmless.'" *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009) (quoting Fed.R.Civ.P.

37(c)(1)). The expert's report "must include the 'how' and 'why' the expert reached a particular

result, and not merely the expert's conclusory opinions." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d

635, 641 (7th Cir. 2008) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir.

1998)).

      Here, Dr. Pastore applied the five factors laid out by the Federal Circuit in *Compare PHG

Techs., LLC v. St. John Companies, Inc.*, for assessing invalidity of a design patent due to

functionality (Filing No. 846-1 at ¶¶ 169-178). 469 F.3d 1361, 1366 (Fed. Cir. 2006). Dr. Pastore

then concluded that "[i]n my opinion, these factors strongly point to the D' 670 design being the

result of functional considerations…." *Id*.  at ¶ 178. However, Knauf claims that Dr. Pastore's

report did not specifically conclude that the D' 670 design patent was functional and that his report

sidestepped the central question of: "whether the design claimed in the D' 670 Patent has an effect on the ability of the insulation to prevent heat or sound transfer." (Filing No. 961 at 9.) Knauf claims that "Dr. Pastore has not and cannot declare the D' 670 Patent as invalid for being functional because the R-value (insulating strength) is not affected by the appearance of the insulation." *Id*. However, these issues can be addressed through cross-examination. The Court is satisfied that Dr. Pastore's report (Filing No. 846-1) is complete and in compliance with Rule 26. While Dr. Pastore may not have used the exact language Knauf would have liked, or answer the specific question posed by Knauf, the Court is persuaded that Dr. Pastore's report provides Knauf with sufficient notice regarding his opinion on the issue of functionality for Knauf to prepare adequately to cross examine Dr. Pastore at trial. Dr. Pastore did the requisite work, considered the relevant factors and provided his expert opinion with enough certainty on the issue of functionality for Knauf to prepare a response. Therefore, the Court **denies** Knauf's Motion to exclude Dr. Pastore's testimony regarding the issue of functionality.

## IV.   CONCLUSION

For the reasons stated above, Knauf's Motion *in Limine* to Exclude (Filing No. 923) Opinions of Dr. Susan Kare and Dr. Christopher Pastore is **GRANTED in part and DENIED in part**. The motion is **granted** in that Drs. Kare and Pastore may not offer opinion testimony at trial regarding aesthetics; nor may it offer opinion testimony that the D' 670 design patent is not ornamental. The motion is **denied** in that Drs. Kare and Pastore may offer opinion testimony at trial as to the way the invention came about or intent of inventor(s) and Dr. Pastore may also offer opinion testimony at trial on the issue of functionality.

An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the trial, counsel may

request a hearing outside the presence of the jury. Likewise, if the parties believe that specific

evidence is inadmissible during the trial, counsel may raise specific objections to that evidence.

      **IT IS SO ORDERED.**

Date:   3/31/2023

 

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Brett J. Arnold
Quinn Emanuel Urquhart & Sullivan LLP
brettarnold@quinnemanuel.com

Melissa J. Baily
QUINN EMANUEL URQUHART & SULLIVAN, LLP
melissabaily@quinnemanuel.com

Brent R. Baughman
DENTONS BINGHAM GREENEBAUM LLP (Louisville)
brent.baughman@dentons.com

Kevin M. Bell
KILPATRICK TOWNSEND & STOCKTON LLP
kbell@kilpatricktownsend.com

Spiro Bereveskos
Woodard Emhardt Henry Reeves & Wagner, LLP
judy@uspatent.com

A. Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Briana Lynn Clark
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
briana.clark@dentons.com

Lindsay Cooper
QUINN EMANUEL URQUHART & SULLIVAN, LLP
lindsaycooper@quinnemanuel.com

Hannah Elizabeth Dawson
Quinn Emanuel Urquhart & Sullivan, LLP
hannahdawson@quinnemanuel.com

Duane R. Denton
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
rusty.denton@dentons.com

David D. Doak
QUINN EMANUEL URQUHART & SULLIVAN, LLP
daviddoak@quinnemanuel.com

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Matthew M. Gardlik
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
mgardlik@uspatent.com

Meaghan Klem Haller
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
meaghan.haller@dentons.com

Ella K. Hallwass
QUINN EMAUEL URGUHART & SULLIVAN LLP
ellahallwass@quinnemanuel.com

Blake R. Hartz
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
bhartz@uspatent.com

Valerie Anne Lozano, I
Quinn Emanuel Urquhart& Sullivan
valerielozano@quinnemanuel.com

Daniel James Lueders
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lueders@uspatent.com

Brice C. Lynch
QUINN EMANUEL URQUHART & SULLIVAN, LLP
bricelynch@quinnemanuel.com

Duane Lyons
Quinn Emanuel Urquhart & Sullivan
duanelyons@quinnemanuel.com

Edward J. Mayle
KILPATRICK TOWNSEND & STOCKTON LLP
TMayle@kilpatricktownsend.com

Kristopher L. Reed
KILPATRICK TOWNSEND & STOCKTON LLP
kreed@kilpatricktownsend.com

James W. Riley, Jr.
RILEY BENNETT EGLOFF LLP
jriley@rbelaw.com

Owen Fullerton Roberts
Quinn Emanuel Urquhart & Sullivan LLP
owenroberts@quinnemanuel.com

Charles Verhoeven
QUINN EMANUEL URQUHART & SULLIVAN, LLP
charlesverhoeven@quinnemanuel.com

Scott Watson
QUINN EMANUEL URQUHART OLIVER & HEDGES
scottwatson@quinnemanuel.com

Travis D. Whitsitt
KILPATRICK TOWNSEND & STOCKTON LLP
twhitsitt@kilpatricktownsend.com

Lance Yang
QUINN EMANUEL URQUHART & SULLIVAN, LLP
lanceyang@quinnemanuel.com