## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| KNAUF INSULATION, LLC,<br>KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNS MANVILLE CORPORATION,<br>JOHNS MANVILLE, INC.,<br><br>Defendants.<br>_____<br>JOHNS MANVILLE CORPORATION,<br>JOHNS MANVILLE, INC.,<br><br>Counter Claimants,<br><br>v.<br><br>KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL,<br>KNAUF INSULATION, LLC,<br><br>Counter Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:15-cv-00111-TWP-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER DENYING KNAUF'S MOTION TO RECONSIDER</u>

This matter is before the Court on Plaintiffs Knauf Insulation, LLC, Knauf Insulation

GmbH, and Knauf Insulation SPRL's (collectively, "Knauf") Motion to Reconsider Order on

Summary Judgment of Invalidity Under 35 U.S.C. § 185, Docket No. 1136 ("Motion to

Reconsider") filed pursuant to Federal Rule of Civil Procedure 54(b) and the Court's inherent

authority to amend interlocutory orders (Filing No. 1143). Knauf initiated this action against

Defendants Johns Manville Corporation and Johns Manville, Inc. (together, "JM") alleging patent

infringement related to seven patents, three of which (U.S. Patent Nos. 8,114,210; 8,940,089; and

9,039,827) are collectively referred to as the "Hampson Patents".  In spring of 2022, after years of hard-fought litigation, the parties filed their combined cross-motions for partial summary judgment and for adoption of claim construction.  The Court granted in part and denied in part the cross-motions (Filing No. 1136).  The Court held, in relevant part, that the Hampson Patents were invalid under 35 U.S.C. § 185 ("Section 185")[1] and granted summary judgment in favor of JM and against Knauf on that issue.  Knauf asks for reconsideration of that holding.  For the following reasons, the Motion to Reconsider is **denied**.

## I.      <u>LEGAL STANDARD</u>

This motion is properly classified as a motion to reconsider under Federal Rule of Civil Procedure 54(b) because no final judgment has been entered in this case.  *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

The Court applies a similar standard as applied to motions to alter or amend a judgment under Rule 59(e).  Motions to reconsider filed pursuant to Rule 54(b) or Rule 59(e) are for the purpose of correcting manifest errors of law or fact or to present newly discovered evidence not available at the time of briefing, and a motion to reconsider an order under Rule 54(b) is judged by largely the same standard as a motion to alter or amend a judgment under Rule 59(e).  *Katz-Crank v. Haskett*, No. 13-cv-00159, 2014 WL 3507298, at *1–2 (S.D. Ind. July 14, 2014); *Woods v. Resnick*, 725 F. Supp. 2d 809, 827–28 (W.D. Wis. 2010).

---

[1] The Court will hereinafter refer to Sections of Title 35 of the United States Code as "Section _."

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 526 (N.D. Ind. 2009). The motion is to be used "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). A motion to reconsider under Rule 54(b) also may be appropriate where there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* (citation omitted).

The purpose of a motion for reconsideration is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). The motion "will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted).

Furthermore,

Motion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail. The Court is entitled to assume that, if [a party] had viable arguments to support its claim, it would have presented them. The Court will not conduct [a party's] research and build [the party's] analysis in order to find facts and law to support [the party's] own claims.

*Brownstone Publ'g, LLC v. AT&T, Inc.*, No. 07-cv-1630, 2009 WL 799546, at *2 (S.D. Ind. Mar. 24, 2009). A motion to reconsider "is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Id.*

## II.    DISCUSSION

In their cross-motions, Knauf moved for summary judgment that the Hampson Patents are not invalid under Section 185, and JM cross-moved for summary judgment that they are invalid (Filing No. 826 at 36–37; Filing No. 843 at 47–57).  The Court agreed with JM (Filing No. 1136 at 57–76).  Knauf now argues the Court misapprehended the Federal Circuit's decision in *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367 (Fed. Cir. 2020) ("*Egenera*") and erred in relying on the United States Supreme Court's decision in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022) ("*Unicolors*"), resulting in an erroneous interpretation of Section 185.  The Court will discuss its summary judgment ruling as to Section 185 before turning to Knauf's arguments on reconsideration.

### A.    Summary Judgment Ruling as to Section 185

The summary judgment ruling at issue focuses on Sections 184 and 185 of Title 35, which relate to filing patent applications in foreign countries.  Section 184 prohibits a person from filing abroad any patent application in respect of an invention made in the United States unless that person has first obtained a foreign filing license or waited six months after first filing the application in the United States.  35 U.S.C. § 184(a).  Section 184 provides that the United States Patent and Trademark Office ("USPTO") may grant a retroactive foreign filing license "where an application has been filed abroad through error and the application does not disclose an invention within the scope of section 181."  *Id.*

Section 185 provides the penalty for violating Section 184.  Section 185 states:

Notwithstanding any other provisions of law any person . . . *shall not* receive a United States patent for an invention if that person . . . shall, without procuring the license prescribed in section 184, have made, or consented to or assisted another's making, application in a foreign country for a patent or for the registration of a utility model, industrial design, or model in respect of the invention.  *A United States patent issued to such person . . . shall be invalid, unless the failure to procure*

4

*such license was through error, and the patent does not disclose subject matter within the scope of section 181.*

35 U.S.C. § 185 (emphases added).

On summary judgment, it was undisputed that Knauf failed to comply with Section 184 when it filed the Hampson Patents abroad; that the Hampson Patents do not disclose a subject matter within the scope of 181; and that Knauf had not sought or obtained a retroactive foreign filing license for the Hampson Patents (Filing No. 1136 at 59). The sole dispute was whether Knauf's failure was "through error," such that Section 185's savings clause would apply and the Hampson Patents would not be invalid.

The Court addressed four issues related to Section 185's savings clause:

(a) whether Section 185's savings clause applies only if the patentee acted through "error" *and* its patent does not fall within the scope of Section 181, or if it applies when either prong is met; (b) which party bears the burden of proof in showing that the savings clause applies; (c) whether this Court may decide whether Section 185's savings clause applies; and (d) whether, in this case, the party bearing the burden of proof has met their burden.

*Id.* at 59–60 (emphasis in original). The Court held, respectively: (a) both prongs must be met for the savings clause to apply; (b) JM bears the burden of proving, by clear and convincing evidence, that the savings clause does not apply; (c) the Court may decide whether the savings clause applies; and (d) JM met its burden of proof.

In deciding whether JM met its burden of proof, the Court explained:

Neither the Federal Circuit nor the Supreme Court has clarified what constitutes an "error" for purposes of Section 185. In a few instances, the Federal Circuit has interpreted the phase [*sic*] "through error" as used in 35 U.S.C. §§ 251, 256. The Court finds these cases persuasive, given that these statutes also govern patents and use the same "through error" standard. The cases interpreting Sections 251 and 256 show that the Federal Circuit interprets the phrase "through error" broadly to include "'all varieties of mistakes—honest and dishonest'—rather than only unintentional inaccuracy." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020) (quoting *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1554–56 (Fed. Cir. 1997)); *see In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986) ("Though the term 'error' is to be interpreted liberally, Congress did not intend to

alter the test of 'inadvertence, accident, or mistake' established in relation to the pre-1952 statutes.").

The Federal Circuit has further described "error" as "accident, inadvertence, or mistake," but has clarified that intentional actions, as compared to unintentional mistakes, may still constitute "error." "A drafting choice that rested on 'no cognizable false or deficient understanding of fact or law,' but that was, say, an eyes-open choice made to secure the patent, 'is not "error" as required by section 251.'" *Fleming v. Escort Inc.*, 774 F.3d 1371, 1380 (Fed. Cir. 2014) (internal citation omitted) (quoting *In re Dinsmore*, 757 F.3d 1343, 1347–48 (Fed. Cir. 2014)); *Ball Corp. v. United States*, 729 F.2d 1429, 1435 & n.9 (Fed. Cir. 1984) ("'Error' is interpreted in the same manner as under section 64 of the old law, i.e., accident, inadvertence, or mistake."); *Application of Wadlinger*, 496 F.2d 1200, 1207–08 (P.T.A.B. 1974) ("We would be hard-pressed to think of examples of situations which would be 'error' and not be encompassed by one or the other of 'inadvertence, accident, or mistake.' 'Inadvertence' and 'accident' may imply something other than deliberate action, but 'mistake' has a 'broad sweet [*sic*] and is certainly inclusive of actions taken in full consciousness." (citations omitted)).

Based on the Supreme Court's analysis in *Unicolors* and the Federal Circuit's interpretation of "error" in two sister statutes—35 U.S.C. §§ 251, 256—the Court finds that in Section 185, "error" may include mistakes of law. However, this finding does not resolve the parties' issue. Knauf's assertions in response to interrogatories that no foreign filing license was required under Section 363, and its conclusory assertion that "to the extent" a foreign filing license was required, do not automatically establish that Knauf violated Section 184 "through error," nor does it preclude summary judgment in JM's favor.

While the *Unicolors* Court held that a mistake of law may constitute error, it also stated that a court need not "automatically accept" a claim that a copyright holder lacked certain legal knowledge. *Id.* at 187–88. "Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." *Unicolors, Inc.*, 595 U.S. at 187–88. The Court of Federal Claims has likewise held that a conclusory assertion of a legal mistake is not sufficient to withstand summary judgment, and that the court may consider circumstantial evidence in deciding whether to accept the claim of legal mistake. *In re Dinsmore*, 757 F.3d at 1347–48 ("In the authorities that the applicants here feature, false or inadequate understandings about then-existing facts or law evidently underlay the aspects of the original patent sought to be altered by reissue. . . . Here, the applicants have not identified any deficient understanding as leading to the issuance of the original claims . . . . Thus, the applicants simply have not alleged or shown that they had a mistaken belief as to the invalidity of those claims . . . ."); *HEALTHeSTATE, LLC v. United States*, 168 Fed. Cl. 624, 651 (Fed. Cl. 2023) ("Mr. Greene merely asserts that he did the best he could. Assuming this is a denial about his knowledge of the law, it is conclusory at best and thus not sufficient to raise an issue of fact.

6

Moreover, under *Unicolors*, that denial would not necessarily resolve the issue …. Reference to circumstantial evidence, including the resources available to Mr. Greene, is therefore appropriate." (citations omitted)).

Here, based on the circumstantial evidence, it is clear that Knauf did not fail to obtain a foreign filing license "through error." The failure to obtain a foreign filing license is significant and serious; it is grounds to completely invalidate a patent. Knauf's purported misapplication of Section 363 is also called into question by the plain language of its sister statute, Section 368, which states that all international applications are subject to Chapter 17, and that the filing of an international application "shall be considered to constitute the filing of an application in a foreign country within the meaning of chapter 17, *whether or not the United States is designated in that international application*." 35 U.S.C. § 368(b). It is difficult to image [*sic*] clearer statutory language to refute Knauf's sworn statement that "such applications designated the United States . . . so no foreign filing license(s) are or were required" (Filing No. 845-9 at 3). Additionally, Knauf has been a sophisticated and well-established manufacturer of insulation for decades, *see, e.g.*, *Johns-Manville Corp. v. Guardian Indus. Corp.*, 586 F. Supp. 1034, 1045 (E.D. Mich. 1983) (identifying Knauf and JM as competitors)), and Knauf has been filing patents and engaging in patent litigation for nearly as long, *see, e.g.*, *Owens-Corning Fiberglass Corp. v. Knauf Fiber Glass GmbH*, 912 F.2d 466 (6th Cir. 1990); *Knauf Fiber Glass, GmbH v. Certainteed Corp.*, No. 02-CV-1215, 2004 WL 771257, at *3 (S.D. Ind. Mar. 24, 2004) (discussing Knauf's claims for infringement of patent with 1993 priority date).

To the extent Knauf argues that it acted "through error" because it misapplied Section 363, that argument is rejected. In light of the plain language of Section 368 and Knauf's sophistication and years of experience, no reasonable jury could conclude that Knauf had any mistaken beliefs as to the application of Section 363 or acted "through error." Additionally, to the extent Knauf's February 2020 interrogatories do not cite Knauf's "error," and instead only assert a now-abandoned legal position, Knauf has likewise failed to create any genuine dispute of material fact as to any "error." The assertion that "[t]o the extent foreign filing licenses were required, the failure was made through error," is entirely conclusory and insufficient to create a genuine dispute for trial. (Filing No. 826-48 at 4); *HEALTHeSTATE, LLC*, 168 Fed. Cl. At 660 (granting summary judgment in favor of defendants and against plaintiff).

Knauf's failure to apply for a retroactive foreign filing license is likewise persuasive evidence that Knauf did not originally fail to obtain the license "through error." An "error," regardless of how it is specifically defined, is a thing that needs correction. Knauf, however, has taken no steps toward any correction, which is convincing evidence that Knauf did not act in "error." It is possible that Knauf has avoided seeking a retroactive foreign filing license because it believes that the USPTO would not issue one, considering how much time has passed since the PCT Application was filed. *See In re Rosuvastatin Calcium Patent Litigation*, 703 F.3d

511, 526 (Fed. Cir. 2012) (citing cases in which reissue was rejected due to absence of diligence in correcting patent after detection of error).

In sum, the lack of any believable grounds for "error" in Knauf's sworn interrogatory responses, combined with Knauf's ongoing failure to apply for a retroactive foreign filing license, show by clear and convincing evidence that Knauf did not violate Section 184 "through error." Knauf's interrogatory responses likewise do not create a genuine issue of material fact as to its purported "error."

(Filing No. 1136 at 70–75).  On this basis, the Court granted JM's request for summary judgment that the Hampson Patents are invalid under Section 185, and denied Knauf's request for summary judgment that the Hampson Patents are not invalid.  *Id.* at 76.

**B.**     **Knauf's Arguments for Reconsideration**

Knauf argues the Court should reconsider the above ruling because the Court "misapprehend[ed] the controlling precedent of *Egenera*."  (Filing No. 1144 at 2).  Knauf contends that under *Egenera*, "error" for purposes of Section 185 means "simply . . . incorrect," regardless of the patentee's subjective intent.  *Id.*  Knauf further argues that the Court's reliance on *Unicolors* was erroneous in light of *Egenera*.  JM responds that reconsideration is not warranted because Knauf is asserting new arguments for the first time upon reconsideration and because the Court did not misapprehend or misapply *Egenera* or *Unicolors*.

**1.**     **Novelty of Knauf's Arguments**

JM asserts that Knauf's arguments about the "simply incorrect" test under *Egenera* are new and may not be raised for the first time in a motion to reconsider.  The Court agrees.  When Knauf filed its summary judgment briefs, Knauf was aware of *Egenera*, having cited *Egenera* elsewhere in its briefs (Filing No. 862 at 32–33).  Yet Knauf did not argue that *Egenera* controls this Court's analysis of Section 185.  Nor did Knauf argue that "error" under Section 185 means "simply incorrect."

Knauf is arguing for the first time on reconsideration that *Egenera* requires that the Court interpret "error" in Section 185 as "simply incorrect." "Belated factual or legal attacks are viewed with great suspicion . . . . Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996); *see Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 933 (7th Cir. 2018) ("Having decided the motion before it correctly, on the briefs and record before it, the district court was not required to vacate that decision to allow [the defendant] to start all over again on the basis of arguments she could and should have made earlier."); *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle to . . . tender new legal theories."); *In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992) ("Motions for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal argumentation which could not have been heard during the pendency of the previous motion . . . ."), *aff'd* 4 F.3d 997 (7th Cir. 1993).

On reply, Knauf attempts to explain how its position is not new, but the Court is not convinced. Knauf asserts that its proffered interpretation of "through error" (*i.e.*, "simply incorrect") had been so well established by statute, caselaw, and court order that Knauf did not need to raise this argument on summary judgment. Rather, Knauf's summary judgment arguments were implicitly premised on this interpretation. In discussing the America Invents Act ("AIA"), Knauf specifically argues:

> under (1) the AIA, (2) this Court's prior interpretation, and (3) JM's failure to properly contest the evidence, there was no need for Knauf to otherwise brief or "explain the reason" for the error. Indeed, Knauf argued "*Under current § 185*, such failure does not invalidate the patent if it 'was through error, and the patent does not disclose subject matter within the scope of section 181.'" The "current § 185" is, of course, post-AIA.

(Filing No. 1149 at 3 (emphasis in original)).

This argument contains several flaws.  First, the AIA does not establish that "through error" in Section 185 means "simply incorrect".  The Federal Circuit, in *Egenera*, clearly stated that the AIA did not change the definition of "error".  972 F.3d at 1377 ("We hold that the AIA did not narrow the meaning of 'error.'").  So the AIA itself does not establish how to interpret "error". Further, while *Egenera* defined "error" as used in Section 256, *Egenera* did not define "error" as used in Section 185 (Filing No. 1136 at 71 (noting the lack of precedent interpreting "error" in Section 185, but finding cases interpreting "error" in Sections 251 and 256 to be persuasive)).

Second, prior to issuing its summary judgment order, this Court had not interpreted Section 185.  The "prior interpretation" Knauf cites is a March 2021 discovery order that relates to Section 265, not Section 185 (Filing No. 747).  Contrary to Knauf's assertion, the Court did not "shift" its interpretation of Section 185 (Filing No. 1149 at 3).

Third, it is simply untrue that JM failed to properly contest Knauf's allegation of "error". In JM's opening summary judgment brief (Filing No. 843),[2] JM committed roughly ten pages (Section III) to the argument that Knauf had not committed "error".  In a subsection titled "Response to Knauf's Purported Undisputed Facts Relevant To § 185", JM stated:

> the foregoing facts entitle JM to summary judgment that the Hampson Patents are invalid. *Knauf's contrary contentions are disputed*, and thus could not support summary judgment to Knauf even if Knauf's interpretation of the law were correct. . . .

> Knauf alleges that 'to the extent foreign filing licenses were required, the failure was made through error.' *That cursory description is disputed, and demonstrably incorrect*, as Knauf's interrogatory responses reveal that it failed to obtain the license due to, at best, a misreading of the law, which is not an 'error' under § 185 or USPTO regulations.

---

[2] JM's opening brief was a combined brief in support of its own motion for partial summary judgment and response in opposition to Knauf's motion for partial summary judgment.

(Filing No. 843 at 49 (emphases added)).   In Section VI of its opening brief, JM responded to Knauf's motion.  Knauf's motion contained several enumerated material facts, and in Section VI, JM listed the enumerated material facts that it disputed (Filing No. 843 at 68).   JM did not list material fact ¶ 61, which alleged "error".   (Filing No. 826 at 37; Filing No. 862 at 34, 59.)  However, in a footnote to the start of Section VI, JM specifically stated that its "opposition to Knauf's motion on the foreign license requirement is in Section III above." (Filing No. 843 at 68 n.16.)  It is (and was[3]) disingenuous to assert that JM failed to dispute that Knauf committed "error".   Moreover, even if Knauf's conclusory allegation of "error" had been undisputed, that allegation would still not show how Knauf interpreted "error".

Fourth, Knauf's two references to "current § 185" show only that Knauf was citing a current version of Section 185 (Filing No. 826 at 36; Filing No. 862 at 57).  They do not show *how* Knauf interpreted Section 185, much less that Knauf believed "error" to mean "simply incorrect".  To be sure, Knauf did not discuss the AIA's amendments to Section 185 anywhere in its summary judgment briefs.  Rather, Knauf focused on the 1988 amendments to Section 185, which added the savings clause (Filing No. 862 at 57–58).  It therefore appears that by "current § 185," Knauf was referring to the post-1988 version of Section 185 (with a savings clause) and not necessarily the post-AIA version (Filing No. 862 at 57 ("[A]t the time of *Gaertner*, the exception in the 'unless' clause of current §185, quoted above, *did not exist*. The 'unless' exception clause was added later by Congress in 1988.  Prior to 1988 . . . [i]t did not include the exception now present and at issue here." (emphasis in original)).

Fifth, and most strikingly, Knauf's current position is belied by its own summary judgment arguments.  Knauf now asserts that its summary judgment arguments were based on the premise

---

[3] As Knauf notes, it made this argument twice on summary judgment (Filing No. 1149 at 2; Filing No. 862 at 54, 59).

that "error" has been interpreted to mean "simply incorrect," and it was only the Court's "surprising[]" break from this "established interpretation" that prompted Knauf's Motion to Reconsider (Filing No. 1149 at 3).  However, in its summary judgment briefs, Knauf argued that "error" meant "unintentional".  Knauf stated, "JM must . . . prove that Knauf *intentionally* sought to disclose matters of national security through its patent filing without getting a license, *i.e., that the failure was 'not through error.'*" (Filing No. 826 at 37 (emphases added)).  Then, when discussing Section 185 in its summary judgment reply, Knauf noted that "requiring a patent challenger in court to prove, by clear and convincing evidence, *the patentee's state of mind* is nothing new." (Filing No. 862 at 56 (emphasis added) (citing *Genes Indus. v. Custom Blinds & Components*, No. SACV 15-0476, 2016 WL 11744807, at *6 (C.D. Cal. Sept. 26, 2016) (stating that defendant must prove an "intentional violation" of Section 184 to prevail under Section 185))).  Additionally, Knauf argued that JM would be unable to produce "evidence *relevant to error*" because when JM's expert witness was asked "if Knauf '*intentionally misled the US Patent Office*,' she said 'I am not making that statement whatsoever.'"  (Filing No. 862 at 55 (emphasis added)).  Knauf also likened Section 185's savings clause to the savings clause in 17 U.S.C. § 411(b), which excuses inaccuracies "unless" the inaccurate information "was included . . . *with knowledge* that it was inaccurate." 17 U.S.C. § 411(b) (emphasis added).[4]

It is apparent that on summary judgment, Knauf did not argue (or premise any arguments on the assumption) that "through error" means "simply incorrect." Knauf argued that "through error" means "intentionally" and anticipated that JM would be unable to prove such intent (Filing

---

[4] In drawing this comparison, Knauf used the Bluebook signal "*compare . . . with*," which serves to show similarities between two authorities, rather than to contrast them. "Comparison of the authorities cited will offer support for or illustrate the proposition." The Bluebook: A Uniform System of Citation R. 1.2(b), at 63 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020).

No. 826 at 276 ("JM must also prove that Knauf [acted] intentionally . . . . . JM has no clear and convincing evidence.")).  Knauf cannot offer new arguments simply because JM *was* able to carry its burden of proof.

Because Knauf's interpretation of "error" in Section 185 is new, Knauf cannot raise it for the first time on reconsideration.  For that reason alone, Knauf's Motion to Reconsider should be denied.  But even considering these new arguments, the Court concludes that it did not commit any manifest error of fact or law in interpreting Section 185, and reconsideration is not warranted.

### 2.    The Court's Application of *Egenera*

Knauf's Motion to Reconsider is largely based on the Court's purported "misapprehension" of *Egenera* (Filing No. 1144 at 1–2).  Knauf contends that *Egenera* held that "through error" in Title 35, as amended by the AIA, means "simply incorrect," and that *Egenera* is binding on this Court's interpretation of Section 185.  JM responds that the AIA did not change the meaning of "through error," that *Egenera* does not apply to Section 185, and that Knauf's proposed interpretation of "through error" does not accord with canons of statutory interpretation.  The Court agrees with JM in all respects.

As an initial matter, *Egenera* does not control the Court's interpretation of Section 185.  Although *Egenera* was decided by the Federal Circuit, *Egenera* involved a different statute, Section 256.  Sections 256 and 185 are both found in Title 35 of the United State Code and both had "deceptive intent" elements removed by the AIA, but the topics, language, and purposes of these statutes differ.  Accordingly, *Egenera* is only persuasive authority.[5]

The Court cited *Egenera* to show that the Federal Circuit "interprets the phrase 'through error' broadly to include '"all varieties of mistakes—honest and dishonest"—rather than only

---

[5] For this same reason, the Court's Orders at Filing No. 747 and Filing No. 883 are inapposite.

unintentional inaccuracy.'" (Filing No. 1136 at 71.)  The Court also cited *In re Weiler*, 790 F.2d 1576 (Fed. Cir. 1986), for the same general proposition (Filing No. 1136 at 71). On summary judgment, these cases weighed in Knauf's favor, since they broadened the scope of "error" that JM was required to disprove.  Yet Knauf now contends that the Court did not interpret "error" broadly enough.

Knauf argues that the Court's reliance on *Egenera* was erroneous because "the Federal Circuit went on to hold that the AIA amendments, structure, and legislative history significantly changed the effect of the 'through error' language." (Filing No. 1144 at 1–2.)  But the *Egenera* court held the opposite.  The defendant in *Egenera* argued that by removing "deceptive intention" from Section 256, Congress intended to "harmonize 'error' with what [the defendant] views as its plain meaning—one that excludes intentional inaccuracy."  972 F.3d at 1377.  The Federal Circuit disagreed and rejected the defendant's "proposed interpretation because it is contrary to the text of § 256, the structure of the AIA, and the AIA's legislative history.  [The court] h[e]ld that the AIA did not narrow the meaning of 'error.'"  *Id.*  The *Egenera* court explicitly stated that the AIA did not change the meaning of "error"; the AIA only removed the "deceptive intent" language.

The *Egenera* court ultimately concluded that "error", as used in Section 256 (both before and after the AIA), means "simply the incorrect listing of inventors."  Knauf argues that "the Court must apply 'the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning,'" and apply *Egenera*'s interpretation of Section 265 to Section 185 (Filing No. 1144 at 3 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 23 (2005))).  This "rule," though, has exceptions.  "[T]he 'natural presumption that identical words used in different parts of the same act are intended to have the same meaning . . . is not rigid and readily yields whenever there is such variation in the connection in which the words

14

are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.'" *Env't Defense v. Duke Energy Corp.*, 549 U.S. 574 (2007) (omission in original) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)).

The *Egenera* court's interpretation of "error" thus does not automatically apply to all of Title 35, as demonstrated by the Federal Circuit's narrower interpretation of "error" in Section 251 in *Fleming v. Escort, Inc.*, 774 F.3d 1371, 1380 (Fed. Cir. 2014) and *In re Dinsmore*, 757 F.3d 1343, 1347–48 (Fed. Cir. 2014) (Filing No. 1136 at 72). And even though *Fleming* and *Dinsmore* applied a pre-AIA version of Section 251, which still included "deceptive intention" language, those decisions defined the term "error," not "error without any deceptive intention." Indeed, neither case held that the patentee intended to deceive the USPTO, and both cases offered examples of conduct that is not "error" but not deceptive. *Fleming*, 774 F.3d at 1380 ("Errors are not limited to slips of the pen but encompass—and most often are—deliberate drafting choices. Not all choices qualify, though …. [A]n eyes-open choice made to secure the patent, 'is not "error"'" (quoting *Dinsmore*, 757 F.3d at 1347–48)); *Dinsmore*, 757 F.3d at 1347–48 (stating "a now-regretted choice" not based on a "cognizable false or deficient understanding of fact or law that underlay the choice" is not "error"). And in *Dinsmore*, the Federal Circuit noted that neither party argued the removal of "deceptive intention" was material to the Court's decision. 757 F.3d at 1346 n.1.

Further, as JM argues, canons of statutory interpretation militate against interpreting "error" in Section 185 as "simply incorrect" because it would render the "through error" clause superfluous (Filing No. 1146 at 6). Section 185 provides that if a person who violates Section 184 nevertheless receives a patent, then that patent "shall be invalid, unless the failure to procure such license was through error, and the patent does not disclose subject matter within the scope of section 181." 35 U.S.C. § 185. It would be "incorrect" for a party to violate Section 184 (or any statute), and neither

party argues otherwise.   So if the Court were to interpret "through error" to mean "simply incorrect," then every patentee who failed to procure a foreign filing license would have done so "through error," since the "error" would be the failure to procure the license.  Inversely, it would be logically impossible to show that a person's failure to obtain a license was *not* "through error." The "through error" clause of Section 185 would be rendered meaningless.[6]

Nullifying Section 185's "through error" clause also would undermine the purpose of Sections 184 and 185, further showing why "through error" should not be interpreted to mean "simply incorrect".  Sections 184 and 185 were intended to ensure that the "United States would have the first opportunity to review all patents in respect of inventions made in the United States and ensure that those patents, if filed abroad, would not endanger national security."  (Filing No. 1136 at 58.)  Section 185 provides a severe punishment—patent invalidity—to deter violations of Section 184 and safeguard national security.  Section 185's savings clause thus applies only if the failure was "through error" *and* the patent does not fall within the scope of Section 181.  (*See* Filing No. 862 at 58–59 (acknowledging that "[c]learly," the savings clause "is in the conjunctive, 'and'").) Patent applicants who believe, mistakenly or otherwise,[7] that their patents do not fall within Section 181 would be less deterred from filing their applications abroad without a license, since they could simply obtain a retroactive license or keep their United States patents, contingent on a *post hoc* determination by the USPTO as to whether the patent implicates national security.  The Court sees no reason to believe Congress intended such a result when it enacted the AIA.

---

[6] Section 256 does not face this same issue when "error" is read as "simply incorrect."  None of Section 256's language would become superfluous as a result.

[7] Importantly, by enacting Section 184, "Congress clearly denied applicants the right to determine for themselves whether a particular disclosure was detrimental to national security, in providing that applications must be licensed for foreign filing or must have been on file as a U.S. application for the requisite six month period." *Application of Gaertner*, 604 F.2d 1348, 1352 (C.C.P.A. 1979).

On reply, Knauf asserts that its proposed interpretation would not render the "through error" clause superfluous because "[s]ome patentees are not required to get a foreign filing license, even if the invention implicates national security." (Filing No. 1149 at 5.) "For example, if the invention is made *outside* of the USA," or "if the applicant files overseas six months after filing a U.S. patent application," then the patent applicant need not obtain a foreign filing license." *Id.* (emphasis in original). Knauf's argument misses the mark. Section 185 only applies to persons who have failed to "procure the license prescribed in section 184,"[8] and Section 184 only prescribes a license for applications "in respect of an invention made in this country" that are "filed in any foreign country prior to six months after filing in the United States." Section 184 does not prescribe a license when the invention is made outside the United States or when the patent applicant has waited six months after filing for a United States patent. Knauf's examples are therefore inapposite and fail to show that the "through error" clause would not be superfluous if it meant "simply incorrect."

Knauf also argues that Congress retained the phrase "through error" because removing it would have "ma[de] the second sentence of § 185 grammatically awkward and ambiguous," and "the statute would have needed to be substantially rewritten to reference when the license was required and not obtained in order to specify when the savings clause applies." (Filing No. 1149 at 5). The Court disagrees for three reasons.

---

[8] For clarity, the second sentence of Section 185 does not refer to *any* person who does not obtain a foreign filing license, or a *general* failure to procure a foreign filing license. The sentence instead refers to "*such* person" (*i.e.*, a person who "shall, without procuring the license prescribed in section 184, have made . . . application in a foreign country for a patent") and "*the* failure to procure *such* license" (*i.e.*, "the license prescribed in section 184"). 35 U.S.C. § 185 (emphases added); *see Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766 (2023) ("The word 'such' usually refers to something that has already been 'described' or that is 'implied or intelligible from the context of circumstances.'" (citing Concise Oxford Dictionary of Current English 1218 (1931); and Webster's New International Dictionary 2518 (2d ed. 1854))); *Nielsen v. Preap*, 586 U.S. 392, 407–08 (2019) ("Our reading is confirmed the Congress's use of the definite article in [the statute]. Because '[w]ords are to be given the meaning that proper grammar and usage would assign them,' the 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'" (internal quotation omitted) (second alteration in original) (quoting A. Scalia & B. Gardner, Reading Law: The Interpretation of Legal Texts 140 (2012))).

First, the suggestion that Congress would employ superfluous language solely for purposes of phrasing ignores fundamental canons of statutory interpretation.  *See Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) ("We must presume that Congress 'says in a statute what it means and means in a statute what it says there.'" (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992))); *Hibbs v. Winn*, 542 U.S. 88, 89 (2004) ("The rule against superfluities instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous."); *see also Corley v. United States*, 556 U.S. 303, 314–15 (2009) ("The Government's reading is thus at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (Alteration, omission, and internal quotations and citations omitted).

Second, Section 185 would not read awkwardly if the "through error" clause were omitted. Absent that clause, the statute's second sentence would read, "A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid, unless [. . .] the patent does not disclose subject matter within the scope of section 181."[9]  There is nothing unclear about this edited language.  It unambiguously states that a patent issued to a person who violates Section 184 is invalid unless the patent does not disclose subject matter within the scope of Section 181. Not coincidentally, that is how Section 185 would read if the Court were to interpret "through error" to mean "simply incorrect," as Knauf requests.

Third, as the Court has just demonstrated, Section 185 would not need to be "substantially rewritten" to remove the "through error" clause.  Knauf offers nothing to suggest that Congress could not have made substantial revisions if needed.  To be sure, the AIA is not a short or simple

---

[9] In its reply, Knauf offers a version of Section 185 that omits only the phrase "was through error," rather than the entire subordinate clause "the failure to procure such license was through error." (Filing No. 1149.)  Knauf's version is "awkward" only because Knauf did not omit the complete clause.

statute.  If Congress had wished to amend Section 185 to remove a "through error" requirement, it certainly could have done so.  *See United States v. Naftalin*, 441 U.S. 768, 773 (1979) ("The short answer is that Congress did not write the statute that way.").

Knauf also notes that the legislative history of the AIA states that by eliminating "deceptive intent," Congress intended to "move[] away from the 19th century model that focused on the patent owner's subjective intent, and towards a more objective-evidence-based system that will be much cheaper to litigate."  157 Cong. Rec. S1378 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).  But even if Congress wished to "move[] away" from a focus on subjective intent, the legislative record does not show that Congress intended to completely discount intent and allow patentees to openly violate Section 184.

Knauf has not shown that the Court misapprehended or misapplied *Egenera* in interpreting "through error" in Section 185, so reconsideration is not warranted.

### 3.     The Court's Application of *Unicolors*

Knauf argues that

> [t]he Court's reliance on the test from Unicolors . . . is also in error in view of Egenera. . . . Mistakenly using the Unicolors test led the Court to infer that Knauf had knowledge that it was inaccurate not to file for a license and to conclude, therefore, that Knauf did not satisfy the through error exception to the patent statute.

(Filing No. 1144 at 4).  JM responds by noting that Knauf was the party that asked the Court to apply *Unicolors* (Filing No. 1146 at 4), and by arguing that the Court accurately cited *Unicolors* to show that even though a mistake of law can constitute "error," the Court "need not 'automatically accept' a claim that a party lacked certain legal knowledge."  (Filing No. 1146 at 6).  On reply, Knauf acknowledges that its summary judgment brief cited *Unicolors*, but "only for the proposition that an error of law can be an 'error.'" (Filing No. 1149 at 3.)  Knauf maintains that the

Court "erroneously applied the factual inquiry from the intent-based copyright statute addressed in *Unicolors* to the patent statute at issue here." *Id.* at 4.

The Court again agrees with JM. On summary judgment, JM stated "Knauf's interrogatory responses reveal that it failed to obtain the license due to, at best, a misreading of the law," and that a mistake of law cannot constitute "error" under Section 185 (Filing No. 843 at 49). Knauf responded that the general maxim that "ignorance of the law is no excuse" does not apply to statutory savings clauses, citing *Unicolors* (Filing No. 862 at 59). JM replied that *Unicolors* is unpersuasive because the statute at issue there involved "knowledge," not "error". (Filing No. 870 at 24–25.) The Court ultimately sided with Knauf, relying on *Unicolors* and other Federal Circuit decisions in concluding that "error" under Section 185 should be interpreted to include mistakes of law (Filing No. 1136 at 72).

The Court then decided whether a reasonable jury could conclude that Knauf had failed to obtain a foreign filing license through a mistake of law constituting "error". The Court cited *Unicolors*, which held that not all "inaccurate applications" of law constitute mistakes of law that would trigger a savings clause. *Id.* "Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." *Unicolors*, 595 U.S. at 187–88. The Court also cited decisions from the Federal Circuit and Court of Federal Claims which "held that a conclusory assertion of a legal mistake is not sufficient to withstand summary judgment." (Filing No. 1136 at 73 (citing *In re Dinsmore*, 757 F.3d at 1347–48; and *HEALTHeSTATE, LLC v. United States*, 168 Fed. Cl. 624, 651 (Fed. Cl. 2023))). Based on the summary judgment record, the Court found that "no reasonable jury could conclude that Knauf had any mistaken beliefs as to the application of

20

Section 363 or acted 'through error.'"   (Filing No. 1136 at 74.)  The Court further held that Knauf's interrogatory answers conclusorily alleging "error" were insufficient to withstand summary judgment.

Knauf argues that this conclusion is erroneous because it takes into consideration Knauf's intent, which Knauf contends is inappropriate under *Egenera*.  But for the reasons explained above, *Egenera* is not controlling, and Knauf's intent is not irrelevant to determining whether Knauf acted "through error" under Section 185. The Court did not misapprehend *Unicolors* or commit a manifest error of law by relying on it.  Knauf has failed to show that the Court committed any manifest errors of law or fact in ruling that the Hampson Patents are invalid under Section 185, so its motion is **denied**.

### III.   CONCLUSION

For the reasons explained above, Knauf's Motion to Reconsider (Filing No. 1143) is **DENIED**.

**SO ORDERED**.

Date: 6/24/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brett J. Arnold
QUINN EMANUEL URQUHART & SULLIVAN LLP
brettarnold@quinnemanuel.com

Melissa J. Baily
QUINN EMANUEL URQUHART & SULLIVAN, LLP
melissabaily@quinnemanuel.com

Brent R. Baughman
DENTONS BINGHAM GREENEBAUM LLP (Louisville)
brent.baughman@dentons.com

Kevin M. Bell
KILPATRICK TOWNSEND & STOCKTON LLP
kbell@kilpatricktownsend.com

Spiro Bereveskos
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
sslama@uspatent.com

David Bilsker
QUINN EMANUEL URQUHART & SULLIVAN, LLP
davidbilsker@quinnemanuel.com

Briana Lynn Clark
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
briana.clark@dentons.com

Lindsay Cooper
QUINN EMANUEL URQUHART & SULLIVAN, LLP
lindsaycooper@quinnemanuel.com

Dina M. Cox
LEWIS WAGNER, LLP
dcox@lewiswagner.com

Hannah Elizabeth Dawson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
hannahdawson@quinnemanuel.com

Duane R. Denton
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
rusty.denton@dentons.com

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Matthew M. Gardlik
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
mgardlik@uspatent.com

Meaghan Klem Haller
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
meaghan.haller@dentons.com

Ella K. Hallwass
QUINN EMAUEL URGUHART & SULLIVAN LLP
ellahallwass@quinnemanuel.com

Blake R. Hartz
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
bhartz@uspatent.com

Lisa A. Hiday
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lhiday@uspatent.com

Valerie Anne Lozano, I
QUINN EMANUEL URQUHART& SULLIVAN
valerielozano@quinnemanuel.com

Daniel James Lueders
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lueders@uspatent.com

Brice C. Lynch
QUINN EMANUEL URQUHART & SULLIVAN, LLP
bricelynch@quinnemanuel.com

Edward J. Mayle
KILPATRICK TOWNSEND & STOCKTON LLP
TMayle@kilpatricktownsend.com

Kristopher L. Reed
KILPATRICK TOWNSEND & STOCKTON LLP
kreed@kilpatricktownsend.com

James W. Riley, Jr.
RILEY BENNETT EGLOFF LLP
jriley@rbelaw.com

Owen Fullerton Roberts
QUINN EMANUEL URQUHART & SULLIVAN LLP
owenroberts@quinnemanuel.com

Scott Watson
QUINN EMANUEL URQUHART OLIVER & HEDGES
scottwatson@quinnemanuel.com

Travis D. Whitsitt
KILPATRICK TOWNSEND & STOCKTON LLP
twhitsitt@kilpatricktownsend.com

Lance Yang
QUINN EMANUEL URQUHART & SULLIVAN, LLP
lanceyang@quinnemanuel.com