**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| KNAUF INSULATION, LLC,<br>KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:15-cv-00111-TWP-MJD |
| JOHNS MANVILLE CORPORATION,<br>JOHNS MANVILLE, INC., | ) ) ) | |
| Defendants. | ) ) ) | |
| JOHNS MANVILLE CORPORATION,<br>JOHNS MANVILLE, INC., | ) ) ) ) | |
| Counter Claimants, | ) ) | |
| v. | ) ) ) | |
| KNAUF INSULATION GmbH,<br>KNAUF INSULATION SPRL,<br>KNAUF INSULATION, LLC, | ) ) ) ) | |
| Counter Defendants. | ) | |

## ORDER DENYING MOTION TO VACATE

This matter is before the Court on a Conditionally Unopposed Motion to Vacate in Anticipation of Settlement and Dismissal (the "Motion to Vacate") filed by Plaintiffs Knauf Insulation, LLC, Knauf Insulation GmbH, and Knauf Insulation SPRL (collectively, "Knauf") (Filing No. 1299). Knauf asks the Court to vacate its March 28, 2024 Sealed[1] Order on Cross-Motions for Partial Summary Judgment and to Adopt Claim Constructions, and Parties' Motions

---

[1] The SJ/CC Order was originally filed under seal but was later unsealed by agreement of the parties (Filing No. 1140; Filing No. 1142).

to Reconsider (the "SJ/CC Order") (Filing No. 1136). Defendants Johns Manville Corporation and Johns Manville, Inc. (together, "JM") do not oppose the Motion to Vacate to the extent the Court grants the parties' contemporaneously filed Joint Motion to Dismiss (Filing No. 1298). The Court has granted the parties' Joint Motion to Dismiss (Filing No. 1311), so the Motion to Vacate is unopposed. For the following reasons, the Motion to Vacate is **denied**.

## I.    BACKGROUND

Knauf initiated this action in January 2015, asserting that JM was infringing on seven of Knauf's patents. After seven years of dispositive and non-dispositive motions practice, amended pleadings, discovery, and stays, the parties filed their cross-motions for partial summary judgment and to adopt claim constructions (Filing No. 825; Filing No. 842). The Court held a hearing on the parties' cross-motions in June 2022. The parties submitted thousands of pages of briefing and evidence in support of their motions, which raised numerous complex and novel issues. As a result, the Court necessarily spent months reviewing, researching, and preparing a thorough order.

On March 28, 2024, the Court issued its one-hundred-twenty-four-page SJ/CC Order,[2] which disposed of all claims relating to six of the seven patents in suit (Filing No. 1136). Shortly after issuing the SJ/CC Order, the Court ordered the parties to schedule a private mediation for no later than June 7, 2024, and set a settlement conference for June 25, 2024 (Filing No. 1137; Filing No. 1138). On April 19, 2024, Knauf filed a Motion to Reconsider a portion of the SJ/CC Order (Filing No. 1143). The Court denied the Motion to Reconsider (Filing No. 1176). The same day, June 24, 2024, the parties filed their remaining motions *in limine* in preparation for the upcoming trial. The final pretrial conference was set for July 23, 2024, with trial set to begin August 19, 2024.

---

[2] In the SJ/CC Order, the Court declined to reach several additional issues raised in the parties' cross-motions, finding that those issues were moot. Had the Court addressed all issues raised by the parties or construed all disputed patent claims, the SJ/CC Order likely would have been substantially longer.

The parties attended a settlement conference with the Magistrate Judge on June 25, 2024, but no settlement was reached (Filing No. 1203). On July 5, 2024, JM filed a motion for leave to file a second motion for summary judgment (Filing No. 1208). In light of the upcoming trial date, the Court ordered expedited briefing on JM's motion and spent considerable resources preparing expedited rulings on the motions *in limine* (Filing No. 1211; Filing No. 1266; Filing No. 1276).

On Friday, July 19, 2024, the parties advised the Court that a settlement had been reached. The Court vacated all dates, including the trial dates, and denied as moot several still-pending motions (Filing No. 1279). The Court ordered the parties to file dismissal paperwork within thirty days. On August 16, 2024, the parties timely filed their Joint Motion to Dismiss (Filing No. 1298) and the instant Motion to Vacate (Filing No. 1299). Because the Motion to Vacate is unopposed, it is now ripe for the Court's review.

## II.   DISCUSSION

An interlocutory order that "does not end the action as to any of the claims or parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. Pro. 54(b). Put another way, "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). "The burden rests with the party seeking relief to demonstrate equitable entitlement to vacatur." *Toutov v. Curative Labs Inc.*, No. 2:20-cv-11284, 2024 WL 1351391, at *2 (C.D. Cal. Mar. 28, 2024) (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994)).

A district court may vacate its own interlocutory orders upon settlement if the parties move for vacatur. Although an appellate court will not force a district court to vacate its orders absent "exceptional circumstances," district courts are granted more discretion and apply a balancing test to determine whether vacatur is appropriate. A number of courts have considered the factors

3

identified in *Cisco Systems, Inc. v. Telcordia Technologies, Inc.*, 590 F. Supp. 2d 828, 830 (E.D. Tex. 2008). The *Cisco* factors include "1. The public interest in the orderly operation of the federal judicial system; 2. The parties' desire to avoid any potential preclusive effect; 3. The court's resources that will be expended if the case continues; and 4. The parties' interest in conserving their resources." *Id.* at 831. The Court will address each *Cisco* factor in turn.

**A.      Public Interest in Orderly Operation of Federal Judicial System**

"Government resources, as well as time and money of the parties, are expended in litigation. There is a general public interest in final decisions that may guide future action. Having submitted a dispute to federal jurisdiction, parties are not free to arbitrarily nullify court judgments." *Cisco*, 590 F. Supp. 2d at 830. Knauf argues that the "public interest in reliance on finality will not be impacted as this Court's claim construction decision would be persuasive, rather than binding, and have little (if any) collateral estoppel effect in a separate proceeding." (Filing No. 1299 at 3). Knauf further asserts that vacating the SJ/CC Order "will have little (if any) impact on any third parties or the public" because "[t]here is no other pending litigation relating to the patents at issue, and limited remaining patent term." *Id.*

The Court agrees with Knauf that the precedential value of the SJ/CC Order is limited, both because it was issued by a district court, and because it largely relates to the specific patents in suit. *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993) ("A district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not stare decisis) apply."). However, the persuasive value of the SJ/CC Order cannot be discounted entirely. *See Bancorp*, 513 U.S. at 26 ("Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."); *Matter of Mem'l Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1301 (7th Cir. 1988) ("When a clash between genuine adversaries produces a precedent

4

. . . the judicial system ought not allow the social value of that precedent, created at cost to the public and other litigants, to be a bargaining chip in the process of settlement. . . . If parties want to avoid stare decisis and preclusive effects, they need only settle before the district court renders a decision, an outcome our approach encourages."); *see also Nilssen v. Motorola, Inc.*, No. 93 C 6333, 2002 WL 31369410, at *3 (N.D. Ill. Oct. 21, 2022) ("Nilssen's argument downplays the importance of this and the previous judges' rulings and interest the public has in such rulings because of the issues decided and the public money that was expended over the last nine years of litigation in the instant cases."); *Allen-Bradley Co., LLC v. Kollmorgen Corp.*, 199 F.R.D. 316, 320 (E.D. Wis. 2001) ("The court must be mindful . . . that its claim construction order, like nearly all court decisions and orders, affects interest beyond those of the parties in the present action.").

Here, the public interest in finality is heightened because the SJ/CC Order not only resolved claim construction issues, but also addressed novel questions of patent law and made invalidity rulings (Filing No. 1136 at 14–16 (discussing standards for IPR estoppel of prior art products); *id.* at 55–56 (holding that a design dictated by a functional manufacturing process is not "functional" such that it is unpatentable); *id.* at 57–68 (addressing novel and underdeveloped issues related to 35 U.S.C. § 185); *id.* at 76, 96–104 (invalidating patents under 35 U.S.C. § 185 and for indefiniteness)). As one district court noted, "[t]he public has an interest in invalidating patents that cannot survive a validity challenge." *Forest Lab'ys, Inc. v. Teva Pham. USA Inc.*, No. 14-121, 2016 WL 3606177, at *2 (D. Del. May 25, 2016) (finding it would be "contrary to the orderly operation of the judicial system" to vacate the court's resolution of claim construction disputes "particularly . . . where the Court's Claim Construction Opinion concluded that terms of several patents-in-suit are indefinite and, therefore invalid."); *S.I.SV.EL. Societa Italiana per lo Sviluppa Dell'elettronica S.p.A. v. Spotify USA Inc.*, No. 18-70, 2019 WL 7281957, at *2 (D. Del. Dec. 27,

5

2019) ("Asking the Court to unravel its prior work is anything but 'orderly' . . . . This is particularly true where, as here, the Orders that Plaintiff seeks to vacate were Orders that invalidated three patents."); *Avellino v. Herron*, 181 F.R.D. 294, 297 (E.D. Pa. 1998) ("The judgments challenged are the fruit of the filtering of the parties' well-argued contentions through the intellectual prism and the experience of the presiding judge. Given the quality of the advocacy, the expense to the parties . . . , the resources allocated by the Court to reaching these judgments, and the novelty of the issues, the public has a stake in preserving them as legal precedents."). For this reason, among others, this case is distinguishable from *Contour Hardening, Inc. v. Vanair Manufacturing, Inc.*, in which the Court vacated only a claim construction order. No. 14-cv-26, 2016 WL 10490508, at *2 (S.D. Ind. Feb. 23, 2016). The public interest in finality therefore does not favor vacatur.

The public interest in promoting settlement likewise does not favor vacatur, since vacatur is not a condition of Knauf and JM's settlement. *Lac v. Nationstar Mortgage, LLC*, No. 15-cv-523, 2017 WL 3394113, at *4 (E.D. Cal. Aug. 8, 2017) ("[V]acatur is not a condition of any proposed settlement of this action. Vacatur also would not alter the case factually so as to advance settlement negotiations or avoid needless motions on the merits in the future. Thus, the general judicial policy favoring settlement is not implicated."). In *U.S. Gypsum Co. v. Pacific Award Metals, Inc.*, which Knauf cites in its Motion to Vacate, the parties filed a joint motion to vacate the court's claim construction and summary judgment order, which stated that "the agreement to file the instant motion [to vacate] was a significant factor in successfully resolving this litigation." No. C 04-04941, 2006 WL 1825705, at *1 (N.D. Cal. July 3, 2006). The Motion to Vacate does not state whether the prospect of vacatur helped the parties reach a settlement, and both the Motion to Vacate and Joint Motion to Dismiss expressly state that settlement and dismissal are not contingent on vacatur. As such, the public interest in promoting settlement would not be served.

6

To the contrary, vacatur in this case would likely disserve the public interest in promoting settlement and the public interest in the orderly operation of the federal judicial system. As a general matter, "the availability of vacatur may facilitate settlement," but the United States Supreme Court has cautioned that it may also "*deter* settlement at an earlier stage" because "*[s]ome* litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court . . . if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur." *Bancorp*, 513 U.S. at 27–28 (emphasis in original). "Were the practice of obtaining a substantive ruling and then settling on the condition that such ruling be vacated to become the routine, it would not only waste significant judicial resources, but could also relegate courts to playing the role of oddsmakers rather than adjudicators. Thus, [courts must] carefully scrutinize[] requests to vacate orders where the request is not based on the merits." *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-cv-1858, 2021 WL 3373292, at *2–3 (N.D. Cal. Aug. 3, 2021) ("Because vacatur can be abused as a mechanism for litigants to obtain a kind of trial run of the merits of their patent claims without being subject to binding consequences, thus potentially delaying settlement and wasting judicial resources, this factor weighs against vacatur."); *see New Cingular Wireless PCS, LLC v. City of Los Altos*, No. 20-cv-294, 2024 WL 2882554, at *5 (N.D. Cal. June 6, 2024) ("[I]f a party believes that it could receive an unfavorable decision and then settle and have the decision vacated, there is less incentive to settle early, before the expenditure of significant party and court resources."); *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-0651, 2006 WL 3741946, at *6 (N.D. Cal. Dec. 19, 2006) ("[T]here is a strong policy reason which militates against allowing a party to hedge its bet by seeking a claim construction ruling from a court and then, if unhappy with that ruling, obtaining a vacatur by extending a covenant not to sue.") (citing cases).

The parties reached a settlement after almost a decade of incredibly complex, motions-heavy, contentious litigation. The Court has prepared innumerable orders, both dispositive and non-dispositive, reviewed thousands of pages of briefing and exhibits, and heard hours of oral argument. The SJ/CC Order alone was the culmination of months, if not years, of time-consuming and diligent work of the parties and Court alike, and it resolved nearly all of the parties' disputes. Vacatur of the SJ/CC Order on the eve of trial would promote exactly the type of "dice rolling" that the Supreme Court warned against in *Bancorp*, particularly because even after the Court issued the SJ/CC Order, Knauf continued to "hedge its bet" by filing a Motion to Reconsider. *See Lac*, 2017 WL 3394113, at *5 ("One order covered by the parties' stipulation is an order for which the court previously denied a request to reconsider. To vacate that order now would signal that any court order is fair game after the fact."); *Spotify USA Inc.*, 2019 WL 7281957, at *2; *Automated Packaging Sys., Inc. v. Free Flow Packaging Int'l, Inc.*, No. 18-cv-356, 2018 WL 6251051, at *1 (N.D. Cal. Nov. 29, 2018) ("The result sought . . . here 'would do just the opposite by encouraging litigants to test their proposed claim constructions via full-blown Markman hearing and decision before settling.'" (quoting *Allen-Bradley Co., LLC*, 199 F.R.D. at 319–20)); *Gardner v. CafePress Inc.*, No. 13-cv-1108, 2015 WL 13427727, at *3 (S.D. Cal. Jan. 9, 2015) ("As an institutional litigant likely facing future copyright cases, settlement-contingent vacatur would eliminate CafePress's incentive to settle early and avoid potentially unfavorable orders.").

The parties had ample opportunity to settle their disputes before the Court issued the SJ/CC Order, but instead, they waited until almost all of their claims were resolved and only a short trial remained. The public interests in settlement and in orderly operation of the federal judicial system would be disserved by "erasing" the Court's rulings at this stage. The first *Cisco* factor therefore weighs against vacating the SJ/CC Order.

8

**B.     Parties' Desire to Avoid Potential Preclusive Effect**

The parties' desire to limit an order's preclusive effect can weigh in favor of vacatur. However, Knauf "does not have any other actual or planned U.S. patent litigation," so the SJ/CC Order "does not give rise to any present preclusive effect or conflict." (Filing No. 1299 at ¶ 4; Filing No. 1299-1 at ¶ 2). This factor is therefore neutral. *Cf. Spotify USA Inc.*, 2019 WL 7281957, at *2 ("[T]he Court acknowledges that Plaintiff wishes to avoid the preclusive effect of the Court's Orders. However, this Court has not afforded decisive weight to this preference. Moreover, Plaintiff's preference weighs even less strongly here where . . . its request is a unilateral one that Defendant Spotify does not join." (citation omitted)).

**C.     Conservation of Court's and Parties' Resources**

Knauf contends that "[t]he public interest in settlement and conservation of judicial resources outweighs any interest in any preclusive effect that might be derived from the SJ/CC Order," but Knauf does not describe what resources would be conserved by vacatur (Filing No. 1299 at 2). As the Court has already noted, neither the parties' settlement nor the joint dismissal of this action is conditioned on the Court granting the Motion to Vacate. The Court will therefore not conserve any additional resources if it vacates the SJ/CC Order.

The Court has already expended significant resources on this case, not accounting for the resources expended by the United States Patent and Trademark Office and the Court of Appeals for the Federal Circuit on the parties' disputes. "The public paid for this use of court resources through its tax dollars. Vacatur would render that expenditure a waste, and the parties cite no public interest that would be served by vacatur which would justify the waste of public funds." *Zinus, Inc. v. Simmons Bedding Co.*, No. C 07-2012, 2008 WL 1847183, at *2 (N.D. Cal. Apr. 23, 2008). Because the Court will not conserve any resources by vacating the SJ/CC Order, and vacatur would

only encourage parties in future cases to expend enormous resources before settling, as was the case here, this factor weighs slightly against vacatur.

**D.    Consideration of All *Cisco* Factors**

The balance of the *Cisco* factors weighs against vacatur. While the Court is pleased that the parties were finally able to reach a settlement, vacatur of the SJ/CC Order would not serve any public interests or conserve any resources. The parties' settlement is not conditioned on vacatur, so the public interest in promoting settlement would not be served and judicial resources would not be conserved. And even if the parties' settlement were conditional, vacatur would still incentivize litigants to wait until substantial resources have been expended, and substantive rulings rendered, to settle in an attempt to erase unfavorable decisions.

In cases where courts have granted vacatur, settlement was often conditioned on (or motivated by) vacatur, and, based on the procedural history of those cases, settlement would not have disserved the public interest like it would here. In *Contour Hardening, Inc.*, for example, the parties reached a settlement and filed their joint motion to vacate just over two years after the start of litigation. 2016 WL 10490508, at *1. Further, the parties in that case only moved to vacate the Court's seventeen-page claim construction order, since settlement was achieved before the court had ruled on any dispositive motions and before trial had even been set. The *Contour Hardening* court described the parties as having settled "at an interlocutory stage," which cannot be said here. *Id.* at *2. Similarly, in *U.S. Gypsum Co.*, the parties achieved settlement less than two years into litigation and stipulated to vacate the court's claim construction order and its thirteen-page summary judgment order, which was the only dispositive order the court had issued. 2006 WL 1825705, at *2 ("[T]he agreement to file the instant motion was a significant factor in successfully resolving this litigation. The Court concludes that there are *no considerations* that would justify denial of the motion." (emphasis added)); *see also Gemini Ins. Co. v. N. Am. Capacity Ins. Co.*,

10

No. 14-cv-121, 2015 WL 3891423, at *1 (D. Nev. June 18, 2015) (finding that no considerations warranted denial of the motion to vacate and noting that because vacatur was a condition of settlement, it would conserve judicial resources); *Jaynes Corp. v. Am. Safety Indem. Co.*, No. 10-cv-764, 2014 WL 11115424, at *2 (D. Nev. Dec. 2, 2014) (same); *Midmountain Contractors, Inc. v. Am. Safety Indem. Co.*, No. C10-1239, 2013 WL 5492952, at *5 (W.D. Wash. Oct. 1, 2013) (same); *Lineweight LLC v. Firstspear, LLC*, No. 18-CV-387, 2021 WL 2402008, at *2 (E.D. Mo. June 11, 2021) (granting joint motion to vacate claim construction order "given the various complex, unresolved issues still pending in this litigation"); *Cuviello v. Cal Expo*, No. 11-CV-2456, 2014 WL 1379873 (E.D. Cal. Apr. 8, 2014) (granting joint motion to vacate filed just two years after initiation of litigation, after court had issued rulings on motions to dismiss and other interlocutory orders, but while the "case [was] still in the pleading phase"). *Contra McCarty v. Liberty Mut. Ins. Co.*, No. 15-CV-210, 2017 WL 11674134, at *4 (D. Wyo. Apr. 24, 2017) (criticizing *U.S. Gypsum* and *Gemini* for failing to "consider the public interest, writ large, before granting traditionally equitable relief," as required by *Bonner Mall*, stating that "[t]he potential that vacatur might actually discourage settlement at a systemic level also undermines the reliance cases such as *Gemini Ins. Co.* and *U.S. Gypsum Co.* place on the cost savings of individual settlement").

Knauf does not cite any analogous cases in which the court granted vacatur, but the Court has identified several in which vacatur was denied. *See, e.g.*, *Capella Photonics, Inc.*, 2021 WL 3373292, at *2–3 (denying unopposed motion to vacate order granting motion for judgment on the pleadings and claim construction order because vacatur would encourage litigants to "unnecessarily waste this Court's time testing their merits arguments before deciding whether to settle," vacatur would risk allowing movant to take inconsistent positions in other litigation, the court already expended resources on dispositive motions to reconsider, and settlement was not

conditioned on vacatur); *Spotify USA Inc.*, 2019 WL 7281957, at *2 (denying motion to vacate invalidity order because of public interest in "clearing away" invalid patents, resources were already expended on litigation, and settlement was not conditioned on vacatur); *Automated Packaging Sys., Inc.*, 2018 WL 6251051, at *1 (denying plaintiff's unopposed motion to vacate claim construction order because vacatur would encourage litigants to "test their proposed claim constructions via a full-blown *Markman* hearing and decision before settling," vacatur would "increase the possibility that other courts might be called on to expend duplicative resources in construing the terms," the court already expended resources on briefing and oral argument, and settlement was not conditioned on vacatur); *Lac*, 2017 WL 3394113, at *4 (denying stipulated request to vacate five orders because orders would not bind parties in future litigation, vacatur was not a condition of settlement, and vacatur at that time "would signal that any court order is fair game after the fact"); *Gardner*, 2015 WL 13427727, at *3 (denying joint motion to vacate two interlocutory orders, even though settlement was conditioned on vacatur, because court had already spent considerable resources on litigation, "leaving the Court with few legal issues left to decide and only a short trial"); *Forest Lab'ys, Inc.*, 2016 WL 3606177, at *2 (denying joint request to vacate claim construction order, finding that public interest would not be served where order invalidated several patents, that vacatur might force another court to consider previously-decided claim construction disputes "anew," vacatur would encourage patentees to obtain an "advisory opinion" before settling, and because only limited resources would be conserved); *Visto Corp.*, 2006 WL 3741946, at *6 (denying motion to vacate partial claim construction order (and all other interlocutory orders) because movant's voluntary action cause case to become moot, claim construction order might not have preclusive effect, and public policy "militates against" allowing a party to "hedge its bets"); *see also New Cingular Wireless PCS, LLC*, 2024 WL 2882554, at *5

(denying opposed motion to vacate order denying claims as moot, finding that movant's concerns about persuasive effect of order did not outweigh the "convention of the American legal system that an appeal is the ordinary process to challenge or erase potentially unfavorable decisions" and that vacatur "may have the effect of delaying settlement negotiations"); *Tumulty v. Fedex Ground Package Sys., Inc.*, No. C04-1425P, 2007 WL 896035, at *3 (W.D. Wash. Mar. 22, 2007) (denying joint motion to vacate final judgment in light of "considerable resources . . . expended on this case-work that would be negated by a vacatur order," the value of the court's order as persuasive authority and for purposes of collateral estoppel); *Aetna Cas. and Sur. Co. v. Home Ins. Co.*, 882 F. Supp. 1355, 1358 (S.D.N.Y. 1995) (denying joint motion to vacate order directing entry of judgment, even though waiver of right to appeal was conditioned on vacatur, because court's decision addressed "[c]ontroversial issues" and because "considerable judicial resources . . . ha[d] already been expended in litigating the issues in this case, which resources would [have been] expended for nought if vacatur were ordered").

Based on all the above considerations, the Court finds that vacatur of the SJ/CC Order is not appropriate here.

### III.   <u>CONCLUSION</u>

To put it mildly, this complex dispute has been zealously litigated by both sides. The quality of work has been impressive, and the sheer quantity of the motions practice has been substantial. The Court applauds the parties for their professionalism and ability to ultimately resolve this case short of trial. But for the reasons explained above, the Court concludes that Knauf's Conditionally Unopposed Motion to Vacate in Anticipation of Settlement and Dismissal (Filing No. 1299) should be **DENIED**.

**SO ORDERED**.

Date:   8/22/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Brett J. Arnold
Quinn Emanuel Urquhart & Sullivan LLP
brettarnold@quinnemanuel.com

Melissa J. Baily
QUINN EMANUEL URQUHART & SULLIVAN, LLP
melissabaily@quinnemanuel.com

Brent R. Baughman
DENTONS BINGHAM GREENEBAUM LLP (Louisville)
brent.baughman@dentons.com

Kevin M. Bell
KILPATRICK TOWNSEND & STOCKTON LLP
kbell@kilpatricktownsend.com

Spiro Bereveskos
Woodard Emhardt Henry Reeves & Wagner, LLP
sslama@uspatent.com

David Bilsker
Quinn Emanuel Urquhart & Sullivan, LLP
davidbilsker@quinnemanuel.com

Briana Lynn Clark
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
briana.clark@dentons.com

Lindsay Cooper
QUINN EMANUEL URQUHART & SULLIVAN, LLP
lindsaycooper@quinnemanuel.com

Hannah Elizabeth Dawson
Quinn Emanuel Urquhart & Sullivan, LLP
hannahdawson@quinnemanuel.com

Duane R. Denton
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
rusty.denton@dentons.com

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Matthew M. Gardlik
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
mgardlik@uspatent.com

Meaghan Klem Haller
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
meaghan.haller@dentons.com

Ella K. Hallwass
QUINN EMAUEL URGUHART & SULLIVAN LLP
ellahallwass@quinnemanuel.com

Blake R. Hartz
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
bhartz@uspatent.com

Lisa A. Hiday
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lhiday@uspatent.com

Valerie Anne Lozano, I
Quinn Emanuel Urquhart& Sullivan
valerielozano@quinnemanuel.com

Daniel James Lueders
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lueders@uspatent.com

Brice C. Lynch
QUINN EMANUEL URQUHART & SULLIVAN, LLP
bricelynch@quinnemanuel.com

Edward J. Mayle
KILPATRICK TOWNSEND & STOCKTON LLP
TMayle@kilpatricktownsend.com

Kristopher L. Reed
KILPATRICK TOWNSEND & STOCKTON LLP
kreed@kilpatricktownsend.com

James W. Riley, Jr.
RILEY BENNETT EGLOFF LLP
jriley@rbelaw.com

Owen Fullerton Roberts
Quinn Emanuel Urquhart & Sullivan LLP
owenroberts@quinnemanuel.com

Lana Robins
Quinn Emanuel Urquhart & Sullivan LLP
lanarobins@quinnemanuel.com

Scott Watson
QUINN EMANUEL URQUHART OLIVER & HEDGES
scottwatson@quinnemanuel.com

Travis D. Whitsitt
KILPATRICK TOWNSEND & STOCKTON LLP
twhitsitt@kilpatricktownsend.com

Lance Yang
QUINN EMANUEL URQUHART & SULLIVAN, LLP
lanceyang@quinnemanuel.com